**Affirmed and Opinion filed July 15, 2014.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-13-00128-CR

**MICHAEL MEGGS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1373219**

## O P I N I O N

Appellant Michael Meggs challenges his murder conviction on the ground that the trial court erred in denying his motion to suppress DNA evidence regarding a blood stain on appellant's pants. The conviction was based in part on the law of parties. At trial, appellant conceded he was at the scene when the murder victim died, and other DNA evidence placed appellant in the same general area. We conclude that any error in the denial of the motion to suppress was

harmless beyond a reasonable doubt and affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Derrell Portis and his common-law wife, Shannon Davis, were at their home one evening in September 2011, when two men knocked on the door. When Portis opened the door, he was shot and killed.

Later that night, appellant presented himself at a hospital emergency room with a gunshot wound in his leg. The hospital called police officer Bert Dillow. Dillow interviewed appellant, who said he was shot by some men as a result of his interaction with some women. At the hospital, Dillow took appellant's pants and underwear and submitted them to the police locker as evidence of the aggravated assault against appellant.

A few months later, in November 2011, police officers arrested appellant and he was charged by indictment with the capital murder of Portis. He pleaded "not guilty." Police submitted appellant's pants to the Harris County Institute of Forensic Sciences for DNA testing. The test results indicated that Portis's DNA matched DNA from the blood stain on appellant's pants.

Appellant filed a motion to suppress appellant's pants, DNA samples from the pants, DNA testing regarding any such DNA samples, and testimony regarding the foregoing matters. Appellant asserted that this evidence should be suppressed on the grounds that the police officer's search and seizure of the pants violated appellant's rights under the United States and Texas Constitutions. During the jury trial, the trial court conducted a hearing on appellant's motion to suppress and denied it. The trial court admitted into evidence appellant's pants and evidence that DNA samples from the blood stain on appellant's pants matched Portis's DNA. The jury found appellant guilty of murder and assessed punishment at

2

twenty-five years' confinement and a $10,000.00 fine.

## II.    ISSUES AND ANALYSIS

On appeal, appellant raises two issues, arguing that (1) the trial court erred in denying his motion to suppress and (2) the trial court's assessment of $259 in court costs is not supported by sufficient evidence.

### A. Was any error in denying appellant's motion to suppress harmless beyond a reasonable doubt?

We presume for the sake of argument that the trial court erred in admitting evidence that DNA samples from the blood stain on appellant's pants matched Portis's DNA.  Any such error would be constitutional error that is subject to harmless-error review.  *See* Tex. R. App. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).  Therefore, under this presumption, we must reverse appellant's conviction unless we determine beyond a reasonable doubt that the presumed error did not contribute to appellant's conviction.  *See* Tex. R. App. P. 44.2(a); *Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008).  To make this determination, we must "calculate as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *Neal*, 256 S.W.3d at 284 (internal quotations omitted). The error was not harmless if there is a reasonable likelihood that the error materially affected the jury's deliberations.  *Id*.

Appellant argues that the admission of this evidence was not harmless beyond a reasonable doubt because there was no other evidence admitted at trial connecting him with the case, the State relied on the DNA evidence, and if the evidence had been suppressed, no reasonable jury would have been able to find appellant guilty of murder beyond a reasonable doubt.

The charge to the jury stated:

3

[A]ll persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

Appellant argued to the jury that he was present during the offense, but that the State had not presented sufficient evidence to prove that he was criminally responsible. The State presented the following evidence at trial:

- Dwanye Wolf, the deputy chief medical examiner for Harris County, testified that Portis died from a gunshot wound to the neck and chest.
- Pictures of the crime scene, which showed substantial amounts of blood covering a large area inside the apartment.
- Shannon Davis, Portis's common-law wife, testified that on the night of the murder, two individuals pushed their way into the home, one of them asked Portis to give him something, a struggle ensued, and shots were fired.
- When the shots ceased, Davis saw Portis covered in blood and her baby crawling toward him crying.
- Shell casings and bullets recovered at the crime scene revealed two different weapons were used.
- According to Davis, one of the individuals who entered the home was wearing a red bandanna and the other was wearing a camouflage bandanna.
- Officer William Campbell, the Harris County crime scene investigator assigned to this case, found a camouflage bandanna and black baseball cap in the front yard of Portis's apartment shortly after the murder.
- The bandanna and baseball cap were submitted to the Harris County Institute of Forensic Science for DNA testing. After the results were obtained, the sample was sent to the national CODIS DNA registry. The national DNA registry matched the DNA sample on the items to

4

appellant. The DNA results located on the bandanna and baseball cap matched appellant's DNA.

- Appellant did not move to suppress the DNA evidence obtained from the bandanna or baseball cap.
- Davis testified that the individual wearing the camouflage bandanna appeared to be about six-feet tall. Appellant's height is six feet, four inches.
- Multiple witnesses testified they had been informed of a conflict between Portis, who dealt marijuana, and two other individuals who previously dealt marijuana in the apartment complex. These individuals were identified as "Streets" and "Clay." Detective Brown determined that "Clay" had telephone communication with appellant on the night of the murder.
- Abigail Rodriguez, a neighbor, observed an African-American male run out of the apartment and jump into the open door of a gold Chevy Impala with tinted windows.
- Christian Crear, who was visiting a friend in the area, heard shots and saw two men in bandannas exit the apartment. One man, who had a wobble, attempted to hop the fence, but got stuck and fell down. He ran around the fence. The other man hopped the fence freely. Both men entered a tannish Impala automobile that had smoke lights on the back and a dent on the side where the door opened on the back.
- Shortly after the shooting, appellant arrived at Baytown Hospital with a gunshot wound. His story regarding how he sustained the wound was suspect because the wound appeared older than appellant related to the doctor.
- When appellant was apprehended, he was repairing the windshield on a gold Chevy Impala. The vehicle contained damage to the back right corner. Officer Campbell processed the Impala. It was registered to appellant and his DNA was found inside the car.

In addition to the evidence the State presented, appellant's trial counsel admitted that appellant was present at the crime scene. Appellant's counsel argued the following to the jury during opening statement:

> What's the difference between [appellant] and a complainant? You won't be able to differentiate. He's by the decedent when the decedent dies. Okay. The DNA's going to be on his pants. Okay. What does that prove? It proves he was there. What else does that

prove? Nothing.

Notably, appellant's opening statement was made before the trial court ruled on appellant's motion to suppress.

During closing argument, appellant's counsel again acknowledged that appellant was present at the murder scene. His counsel made the following argument to the jury:

> There is no evidence that [appellant] saw anyone with a bandanna on their face, that [appellant] saw anyone with a pistol in their hand, that [appellant] knew what was about to happen as he approached the front door. What's the testimony? He's certainly there. I told you that in opening statements, didn't I? [Appellant] is going to be there.

In sum, before the trial court ruled on appellant's motion to suppress, appellant informed the jury in opening statement that he was at the crime scene and told the jury that it would hear evidence that the victim's DNA was found on appellant's pants. Appellant then argued that, while he was in the vicinity, he was not criminally responsible. In the context of this bloody crime scene, where the victim's blood could be found throughout the entire area of the apartment, the DNA evidence does not prove more than what appellant already had conceded — that he was present at the scene of the murder. *See Nonn v. State*, 117 S.W.3d 874, 883 (Tex. Crim. App. 2003) (holding evidence harmless beyond a reasonable doubt when it was substantially similar to other evidence placed before the jury).

Even if appellant had not informed the jury of his presence at the crime scene, other DNA evidence and eyewitness testimony established that he was present at the crime scene when Portis died. *See Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex. Crim. App. 1996) (evidence harmless beyond a reasonable doubt where other physical evidence strongly connected defendant to murders). Although the DNA evidence contained on appellant's pants could be characterized

6

as important, it was cumulative of other DNA evidence that placed appellant at the scene of the crime. *See Davis v. State*, 203 S.W.3d 845, 855 (Tex. Crim. App. 2006) (holding harmless beyond a reasonable doubt admission of "important" evidence that was cumulative). Still, one might argue that the DNA evidence contained on appellant's pants was harmful because it might show he was physically closer to the victim than could be established by the other DNA evidence placing appellant at the crime scene. *But see Neal*, 256 S.W.3d at 284 (holding harmless beyond a reasonable doubt admission of evidence that "added one more vivid detail to the much larger story of the events surrounding the murder"). The evidence, however, does not place appellant closer to the victim because the State's photographs reveal the victim's blood had splattered into the area where the baseball cap and bandanna were found that contained DNA matching appellant's DNA sample.

Physical and DNA evidence other than evidence collected from appellant's pants established that appellant was present at the murder scene, appellant conceded his presence at the scene, and appellant informed the jury that the State had found DNA evidence on his pants which placed him at the scene. In light of appellant's concession during opening statement and the evidence other than the DNA on appellant's pants that was presented during trial, we conclude that the admission of the evidence that appellant sought to suppress did not materially affect the jury deliberations. *See Jeffley v. State*, 38 S.W.3d 847, 859–60 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (determining that jury did not place a great deal of weight on potentially inadmissible confession because appellant had also made an admissible confession). Presuming for the sake of argument that the trial court erred in denying appellant's motion to suppress, we conclude beyond a reasonable doubt that any such error did not contribute to appellant's conviction.

*See Neal*, 256 S.W.3d at 284; *Davis*, 203 S.W.3d at 855; *Nonn*, 117 S.W.3d at 883; *Dowthitt*, 931 S.W.2d at 263; *Jeffley*, 38 S.W.3d at 859–60. Accordingly, we overrule appellant's first issue.

## B. Is there a basis in the record for assessing $259 in court-costs?

Appellant argues that the trial court erred in assessing a specific amount of court costs against him because (1) the Justice Information Management System ("JIMS") printout detailing costs is not a bill of costs that complies with Texas Code of Criminal Procedure Article 103.001; (2) the cost bill is not signed; (3) there is no evidence the JIMS Cost Bill was considered by the trial court; and (4) assessing a specific amount of costs while failing to present him with a bill of costs in the trial court deprives him of his right to due process of laws.

We review the assessment of court costs on appeal to determine if there is a basis for the costs, not to determine whether there was sufficient evidence offered at trial to prove each cost assessed in the judgment. *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). Traditional sufficiency-of-the-evidence standards of review do not apply. *Id.*

Generally, a bill of costs must (1) contain the items of cost, (2) be signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost, and (3) be certified. *Id.* at 392–93; see Tex. Crim. Proc. Code Ann. arts. 103.001, 103.006 (West 2014). The Court of Criminal Appeals of Texas has held that a JIMS report constitutes an appropriate bill of costs if the report itemizes the accrued court costs in the appellant's case, contains a certification by the trial court clerk that the document is a true and correct copy of the original, and is signed by a deputy clerk. *Johnson*, 423 S.W.3d at 393. The JIMS report in this record contains an itemized list of costs in appellant's case, a certification by the district clerk that the document is a true and correct copy of the original, and is

signed by a deputy district clerk. *See id.* at 392–93. That the bill of costs was not prepared until after the trial court signed the judgment does not defeat the lawfulness of the bill of costs. *Id.* at 394. Accordingly, appellant's first three arguments provide no basis for relief.

Appellant further urges that his constitutional right to due process has been violated if he is deprived of an opportunity to be heard in the trial court regarding the propriety of the assessed court costs. This argument likewise provides no grounds for relief under precedent from the Court of Criminal Appeals. *See Cardenas v. State*, 423 S.W.3d 396, 398–99 (Tex. Crim. App. 2014); *Johnson*, 423 S.W.3d at 388–89. The high court has held that criminal defendants have constructive notice of the mandatory-cost statutes and that the procedures outlined in *Johnson* provide defendants with notice and an opportunity to be heard because, (1) appellants do not have to preserve error in the trial court; (2) appellants may challenge the assessment of court costs on direct appeal; and (3) appellants also may challenge the assessment of court costs by a motion under article 103.008. *See Cardenas*, 423 S.W.3d at 398–99; *Johnson*, 423 S.W.3d at 388–89. Therefore, under this precedent, appellant's constitutional challenge lacks merit. *See Cardenas*, 423 S.W.3d at 398–99; *Johnson*, 423 S.W.3d at 388–89.

We overrule appellant's second issue.

## III. CONCLUSION

We conclude that (1) any error in denying appellant's motion to suppress and admitting DNA evidence found on appellant's pants was harmless beyond a reasonable doubt and (2) there is a basis for the assessment of $259 in court costs against appellant in the trial court's judgment. Thus, appellant's challenges to his murder conviction fail.

9

The judgment of the trial court is affirmed.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Jamison and Wise.
Publish — TEX. R. APP. P. 47.2(b).