**Affirmed and Memorandum Opinion filed August 14, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00939-CR

---

## LADONDRELL MONTGOMERY, Appellant

### V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1328816**

---

## M E M O R A N D U M   O P I N I O N

Appellant Ladondrell Montgomery was convicted of aggravated robbery and sentenced to 45 years in prison. *See* Tex. Penal Code Ann. § 29.03 (West 2011). Appellant now appeals his conviction in three issues. In his first issue, appellant contends the trial court erred when it denied his motion to suppress evidence found during an inventory search of his car. We disagree because the evidence was found in plain view during a post-arrest inventory search conducted according to

the inventory search policy of the Houston Police Department. In his second issue, appellant asserts the trial court erred when it did not include a burden-of-proof instruction regarding extraneous offenses in the punishment-phase jury charge. We overrule this second issue because appellant did not object in the trial court and has not demonstrated that he suffered egregious harm as a result of the trial court's omission of the instruction. Finally, in his third issue, appellant asks this Court to strike the court costs assessed against him. Because a panel of this Court has previously addressed and rejected each specific argument raised by appellant in support of his third issue, we overrule that issue as well. We therefore affirm the trial court's judgment.

## BACKGROUND

### A. A Cricket store is robbed and appellant is arrested for a traffic offense.

On December 31, 2009, the complainant, Rocio Rico, was working as a manager at a Cricket cell phone store in a north Houston shopping center. During the afternoon, appellant approached the store's locked front door. Believing appellant was a customer, the complainant unlocked the door, letting appellant into the store. When the complainant asked appellant if she could help him, he lifted his shirt, revealing a gun tucked into the waistband of his pants. Appellant then told the complainant to give him the money. The complainant quickly gave appellant the store's money. Appellant took the money and two new cell phones and then left the store. The complainant quickly locked the door behind appellant, and as she did she saw appellant getting into a white car. The complainant also noticed a white female in the car with appellant. The complainant wrote down the car's license plate number: DKZ-437. She then called the police to report the robbery. The complainant also noted the serial numbers from the two stolen

2

phones so that they could not be activated.

Officer Derek Jones of the Houston Police Department responded to the complainant's robbery call. The complainant gave Officer Jones a physical description of the suspect involved in the robbery and told him what had been stolen. Officer Jones learned there was a surveillance video of the robbery and he viewed it at the store. Based upon his viewing of that video, Officer Jones was able to identify appellant in the courtroom during his trial.

A few days after the Cricket store robbery, Officer Jennifer Kennedy was patrolling the northeast side of Houston. Officer Kennedy was looking for vehicles listed as suspicious because they had been involved in recent cases. While driving through the parking lot of the Legacy Inn Motel, Officer Kennedy saw a white car with a license plate that matched the car used in the aggravated robbery at the nearby Cricket store. Officer Kennedy ran the license plate and discovered that the registration on the vehicle had expired. Officer Kennedy exited the motel parking lot and parked her patrol car where she could observe the only exit. When the white car pulled out of the motel parking lot a few minutes later, Officer Kennedy saw that it was driven by a man with a white female passenger. Officer Kennedy believed the occupants fit the physical description of the suspects in the Cricket store robbery.

Because she believed the car occupants may have been armed and dangerous due to their involvement in an armed robbery, Officer Kennedy called for back-up and then stopped the white car. Officer Kennedy arrested appellant for having an expired registration. Officer Kennedy arrested the passenger for failure to identify and because she had an arrest warrant due to a parole violation.

Because both occupants of the car had been arrested and there was no one at the scene to whom she could release the vehicle, Officer Kennedy arranged to have

3

the vehicle towed. Prior to the vehicle being towed, Officer Kennedy performed an inventory of the contents of the vehicle. Officer Kennedy testified that she was required to conduct an inventory in order to safeguard the property in the vehicle so there would be a record of what was in the vehicle in case something turned up missing. Officer Kennedy testified this was the HPD policy in place at the time and she followed that policy. Officer Kennedy looked through the vehicle, documented what was in the vehicle on a tow slip, signed the tow slip, and then had the wrecker driver sign it as well.

During the inventory, Officer Kennedy saw two new cell phones still in their boxes in the back seat of appellant's car. Officer Kennedy knew appellant's car had been associated with the robbery of the cell phone store, so she contacted the HPD Robbery Division. The robbery investigator advised her to tag the cell phones and place them on investigative hold. Officer Kennedy took custody of the phones and eventually took them to the HPD Property Room. Officer Kennedy denied that it was against HPD policy to perform an inventory search on the side of the road. In addition, Officer Kennedy testified that appellant pulled his car off the road and into a parking lot when he was pulled over.

As part of his investigation, Sergeant John Rivera of the HPD Robbery Division took the cell phones recovered from appellant's car to the Cricket store, where he verified that they were the phones that had been stolen during the December 31, 2009 robbery. In addition, Sergeant Rivera arranged to have the complainant observe a live line-up that included appellant along with four other men from the city jail. The complainant viewed the line-up in person but she was unable to identify appellant.

4

**B.** **The trial court denies appellant's motion to suppress and appellant is found guilty of aggravated robbery.**

Appellant filed a pre-trial motion to suppress all evidence obtained during the inventory search of his vehicle. Appellant argued that an inventory search of a vehicle is no longer constitutionally permissible after the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009). The trial court held a hearing on appellant's motion outside the presence of the jury. Officer Kennedy was the only witness to testify during the hearing, and she provided the testimony summarized above.

Appellant attempted to impeach Officer Kennedy regarding her reliance upon an inventory justification for the search of his car. Appellant elicited that Officer Kennedy could not testify as to a specific date on which the HPD policy regarding inventory searches had changed. Officer Kennedy also agreed that after the traffic stop, both appellant and the female passenger were placed in handcuffs and had been secured in the back seat of two different patrol cars. Nevertheless, Officer Kennedy continued to maintain that the search was justified as an inventory search because it was HPD policy to search the vehicle before it was towed in case any property came up missing at the tow lot.

Appellant's counsel initially argued that Officer Kennedy's search was improper under *Gant*. Appellant then argued that the inventory search was not properly done because Officer Kennedy did not have a right to search the entire vehicle, specifically the trunk. Appellant's counsel concluded by arguing that the police should have obtained a search warrant; because they did not, any evidence obtained from the vehicle should be suppressed.

The State responded that appellant's reliance on *Gant* was misplaced because that case addressed searches incident to arrest, and the search in this case

was not done incident to arrest. Instead, the State asserted Officer Kennedy had conducted a valid inventory search because she had followed the established HPD procedure for inventory searches. The State also argued that the search of the car was valid under the automobile exception because Officer Kennedy had probable cause to believe the car contained evidence of the aggravated robbery of the Cricket store. The trial court overruled appellant's motion to suppress.

When Officer Kennedy testified at trial, appellant renewed his argument that the evidence obtained as a result of Officer Kennedy's search of his car should be suppressed. Appellant cross-examined Officer Kennedy regarding HPD's inventory policy. Appellant argued that for an inventory search to be valid, the policies and procedures of the police department must be followed and that Officer Kennedy did not follow them. Officer Kennedy again responded that because there was no one at the scene with a driver's license who could take appellant's car, she had to have the car towed. Officer Kennedy also stated that she filled out a tow slip documenting the personal property found in the vehicle and the wrecker driver signed it.

### C. The trial court admits evidence of numerous extraneous offenses during the punishment phase of appellant's trial, and appellant is sentenced to 45 years in prison.

At the conclusion of the evidence, the jury found appellant guilty of aggravated robbery. The punishment phase of appellant's trial started the same day.

In addition to charging appellant with aggravated robbery, the State included two enhancement paragraphs in the indictment, alleging that appellant had previously been convicted of robbery in 2006 and aggravated robbery in 1998. Appellant pleaded "not true" to these allegations, but the State introduced certified

6

judgments for both convictions without objection.

The State also presented evidence of several unadjudicated extraneous offenses it alleged were committed by appellant. These included an October 22, 2009 robbery of a payday loan store called Advance America. Natalie Stuart testified that around 11:40a.m., appellant walked into the store, walked up to her counter, and slid a note to her demanding all her money. Ms. Stuart testified that she saw appellant had his hand in his pocket and she feared he had a weapon, so she complied by taking the money out of the register. The robbery was caught on surveillance video that was admitted without objection. Ms. Stuart identified appellant both in a line-up and in court.

The State also presented evidence that on December 21, 2009, appellant robbed another payday loan store called Check Into Cash. Claudia Arvizo testified that she had been working as a store manager when she was approached by appellant on her way out of the store to get breakfast before the shop opened. Ms. Arvizo informed appellant that the store was closed and asked him to come back a little later. Appellant returned five minutes after the store opened and asked about a payday loan. After Ms. Arvizo told appellant the requirements, appellant lifted his shirt to reveal a gun tucked in his pants. Appellant then demanded all of the money Ms. Arvizo had. Ms. Arvizo explained there was no money in the store because a different employee had not yet returned from the bank with the store's cash. Appellant then walked around the counter to look in the registers. When appellant saw there was no money, he took Ms. Arvizo's purse and walked her towards the back of the shop. Ms. Arvizo went into the restroom and appellant told her to not come out. Though she acknowledged she could not remember some of the details about that day, Ms. Arvizo was able to identify appellant in a line-up and in court.

The State presented evidence that after appellant left the Check Into Cash store he robbed another payday loan store known as The Cash Biz. Flavia Mendez, the manager of the store, testified that appellant came into the store and approached Ms. Mendez's co-worker. When Ms. Mendez moved to assist her co-worker, appellant pulled up his shirt, pulled out a gun, and demanded money. Ms. Mendez gave appellant the money and he left. Ms. Mendez admitted that she could not remember the description of the robber that she gave the police, but she was able to identify appellant in court.

Finally, the State offered testimony that appellant had robbed Marilu Martinez at gun point on January 3, 2010. Ms. Martinez testified that she was working at a Subway sandwich shop when appellant walked up to the cash register and asked for two cookies. As Ms. Martinez was about to ring up the sale, appellant pulled out a gun and took about $100 or $150 from the register. On cross-examination, Ms. Martinez said she could not remember if the date of the offense was a Sunday, which would have affected the time she began working. The patrol officer called to the scene testified that he spoke with the victim, but during his testimony he could not identify Ms. Martinez as the Subway robbery victim. He also testified that the victim had told him that appellant had fled out the back of the restaurant and jumped in a silver vehicle, which contradicted Ms. Martinez's testimony.

The police who investigated these robberies also testified during the punishment phase of appellant's trial. Sergeant Rivera, who had already testified during the guilt-innocence phase, revealed that appellant had been a suspect not only in the robbery of the Cricket store, but also in a number of robberies in the northern part of Houston. Sergeant Rivera testified that he had shown a video of the line-up he conducted for the complainant to the victims of the October 22

8

robbery, the two December 21 robberies, and the January 3 robbery. He testified that each victim identified appellant as the man who robbed her store. Sergeant Rivera also testified that each of these robberies occurred within a ten-minute to fifteen-minute drive of the Legacy Inn Motel.

The punishment-phase jury charge did not contain an instruction telling the jury that it could not consider the extraneous offense evidence introduced by the State unless it believed appellant committed the extraneous acts beyond a reasonable doubt. Appellant did not object to the absence of this instruction. The jury charge did provide that the State was required to prove the allegations in the penalty paragraphs beyond a reasonable doubt and this burden never shifted to appellant. During the arguments on punishment, the State told the jury that it was required to prove the extraneous offenses beyond a reasonable doubt. The State then argued that it had met that burden and the jury could consider all of the extraneous offense evidence. The State asked the jury to sentence appellant to life in prison. In contrast, appellant argued that the jury should not consider some of the extraneous offense evidence because the State had not proven those offenses beyond a reasonable doubt. In addition, appellant's counsel asked the jury to impose a sentence in the lower range of punishment. The jury found the allegations in the enhancement paragraphs true and sentenced appellant to 45 years in prison. This appeal followed.

### D. Appellant's appeal is abated and remanded to the trial court for entry of additional findings addressing the inventory search conducted by Officer Kennedy.

After sentencing, the trial court found that Officer Kennedy had reasonable suspicion to detain appellant based upon the description of the vehicle on the suspicious automobiles list as well as for the expired registration. The trial court also concluded that there was a valid arrest for the expired vehicle registration.

Finally, the trial court concluded that both the stop and the arrest were valid.

After appellant appealed his conviction, this Court determined that the trial court's findings were inadequate regarding the inventory search conducted by Officer Kennedy. We abated appellant's appeal and remanded the case to the trial court for additional findings and conclusions. The trial court timely signed additional findings and conclusions. We discuss its findings below. The trial court also made several conclusions of law, including that after she had arrested appellant, Officer Kennedy conducted a valid inventory of the vehicle in compliance with HPD's vehicle inventory policy.

## ANALYSIS

Appellant brings three issues on appeal challenging the trial court's judgment. We address each issue in turn.

## I. The trial court did not err when it denied appellant's motion to suppress evidence found during the inventory of his impounded car.

In his first issue on appeal, appellant contends the trial court erred when it denied his motion to suppress the evidence found during Officer Kennedy's inventory search of his car. According to appellant, the trial court should have suppressed the evidence because Officer Kennedy's inventory search was not conducted according to a standardized police procedure and instead was done in bad faith and as a pretext for a warrantless search for incriminating evidence.[1] Because we conclude Officer Kennedy's inventory search was conducted in compliance with HPD's inventory policy, we disagree.

---

[1] Appellant does not challenge the lawfulness of the impoundment of his vehicle. In addition, appellant concedes in his appellate brief that he was "pulled over on a valid stop."

### A.    Standard of review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's findings of historical fact and reviewing de novo the trial court's application of the law. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).  The trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony at the suppression hearing.  *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  As the trier of fact, the trial court is free to believe or disbelieve all or any part of a witness's testimony, even if that testimony is uncontroverted.  *Id.*; *Marsh v. State*, 140 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

In reviewing a trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling.  *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When, as here, the trial court makes findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports these fact findings.  *Id.* We then review the trial court's legal ruling de novo unless the fact findings that are supported by the record are also dispositive of the legal ruling.  *Id.*  We must uphold the trial court's ruling if it is supported by the record and correct under any theory of the law applicable to the case.  *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

### B.    The State established that Officer Kennedy conducted the inventory search according to an established policy of the Houston Police Department.

Inventory searches protect (1) the vehicle owner's property while the vehicle is in police custody, (2) the police against claims or disputes over lost or stolen

property, and (3) the police from possible danger. *Richards v. State*, 150 S.W.3d 762, 771 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (en banc) (citing *Colorado v. Bertine*, 479 U.S. 367, 372 (2009)). Inventory searches do not implicate the policies behind the warrant requirement. *Bertine*, 479 U.S. at 371. Rather, a valid police officer's inventory search constitutes a "well-defined exception" to the Fourth Amendment's warrant requirement. *Id.*

To meet the requirements of that exception and qualify as a valid inventory search, the inventory must be conducted in good faith and pursuant to a reasonable standardized police procedure. *Moskey v. State*, 333 S.W.3d 696, 700 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Bertine*, 479 U.S. at 367). The inventory search must be designed to produce an inventory of the vehicle's contents and may not be used as a "'ruse for a general rummaging in order to discover incriminating evidence.'" *Richards*, 150 S.W.3d at 771 (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). The State bears the burden to establish that the police conducted a lawful inventory search. *Moskey*, 333 S.W.3d at 700. An inventory search is not, as suggested by appellant, rendered unlawful because it is conducted prior to actual impoundment. *See Daniels v. State*, 600 S.W.2d 813, 815 (Tex. Crim. App. 1980). The State meets its burden by demonstrating that an inventory policy exists and the police officers followed the policy. *Moskey*, 333 S.W.3d at 700 (citing *Moberg v. State*, 810 S.W.2d 190, 195 (Tex. Crim. App. 1991)). The State need not, as urged by appellant, offer a written inventory into evidence to sustain its burden. *See Stephen v. State*, 677 S.W.2d 42, 44 (Tex. Crim. App. 1984).

The trial court made findings on each element the State had the burden to prove. Specifically, the court found that (1) after both appellant and the passenger had been arrested, there was no one at the scene to whom Officer Kennedy could

12

release the vehicle, so she was required to impound it; (2) at the time of the traffic stop, HPD had a policy to conduct an inventory of any personal property in an impounded vehicle, and the officer conducting the inventory had to fill out a tow slip documenting the personal property found in the vehicle before the vehicle was towed; (3) Officer Kennedy was aware of and understood HPD's inventory search policy, and she followed it when she searched the vehicle; (4) Officer Kennedy observed two cell phones and chargers in their original boxes in plain view on the back seat during her inventory search; (5) Officer Kennedy seized the two cell phones and chargers during her search conducted in full compliance with the HPD vehicle inventory policy; and (6) based on her demeanor during her testimony at the hearing on the motion to suppress and during the trial on the merits, Officer Kennedy (a) conducted the inventory of the vehicle in good faith, (b) did not conduct the inventory of the vehicle as a pretext for an unauthorized warrantless search for evidence, and (c) did not exceed the scope of the HPD inventory search guidelines.

We conclude that when viewed in the light most favorable to the trial court's ruling, Officer Kennedy's testimony during the suppression hearing and the trial on the merits—summarized above—supports these findings. Because the State met its burden to establish that Officer Kennedy conducted a valid inventory search of appellant's vehicle, we hold the trial court did not abuse its discretion when it denied appellant's motion to suppress.

Appellant's reliance on *Arizona v. Gant* is misplaced because that case does not address an inventory search. Instead, in *Gant*, the Supreme Court of the United States limited the scope of searches incident to an arrest. 556 U.S. at 348. Appellant overlooks *Gant*'s statement that "when these justifications [for a search incident to arrest] are absent, a search of an arrestee's vehicle will be unreasonable

13

unless police obtain a warrant or show that another exception to the warrant requirement applies." *Moskey*, 333 S.W.3d at 702 (quoting *Gant*, 556 U.S. at 351). Because the State established that the inventory search exception applies, *Gant* has no bearing on the outcome of this appeal. *See Moskey*, 333 S.W.3d at 702. We overrule appellant's first issue.

## II. Appellant did not suffer egregious harm as a result of the trial court's failure to instruct the jury regarding the burden of proof for extraneous offenses during the punishment phase of appellant's trial.

In his second issue, appellant contends the trial court had a sua sponte duty to include in the punishment-phase jury charge an instruction to the jury that it could not consider extraneous offense evidence in assessing punishment unless the jury believed beyond a reasonable doubt that such acts and offenses were attributable to the defendant. He also argues that he suffered egregious harm as a result of the trial court's failure to include this required burden-of-proof instruction because its absence made the State's punishment case significantly more persuasive.

The State concedes that the trial court erred but contends appellant has not shown he suffered egregious harm as a result. After examining the jury charge, the evidence, the arguments made by counsel for both the State and appellant, and all other relevant information found in the entire record, we conclude appellant has not demonstrated he suffered egregious harm as a result of the trial court's error.

### A. Standard of review

Appellant and the State agree that because appellant's trial counsel failed to object to the trial court's error in omitting the burden-of-proof instruction, we review the error under the egregious harm standard announced in *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). A defendant suffers egregious harm

14

when the error deprives the defendant of a fair and impartial trial. *Taylor v. State,* 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). Such errors affect the very bases of the case, deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Id.* at 490. The harm must be actual and not just theoretical. *Id.* In addition, the harm that must be considered is not the admission of extraneous offense evidence but the impact of the omission of the reasonable doubt instruction from the punishment phase jury charge. *Ellison v. State*, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002). Egregious harm is a difficult standard to prove and it must be proved on a case-by-case basis. *Id.* at 227. In making this determination, we review the jury charge, the state of the evidence, the arguments of counsel, and any other relevant information in the entire record. *Taylor,* 332 S.W.3d at 489.

> **B.** **Appellant has not established that he suffered egregious harm as a result of the trial court's omission of the reasonable doubt instruction.**

During the punishment phase of the trial, the State presented evidence that appellant committed four additional aggravated robberies prior to his arrest. The State did this through the testimony of the complainant in each of the robberies as well as the police officers who investigated them. During its closing argument, the State discussed the burden of proof. The prosecutor told the jury: "All of the evidence that you heard in punishment, it's the same burden that we had in guilt-innocence. So, all of the extraneous offenses that we put on, the officers and the victims, to tell you about what happened. Same burden, we have to prove those beyond a reasonable doubt." The State also told the jury it was to consider all of the evidence admitted during both phases of the trial. Finally, the State discussed each of the extraneous offenses in arguing that appellant had chosen a life in crime, was violent and dangerous, and deserved the maximum sentence of life in prison.

15

Appellant's counsel also addressed the State's burden of proof on the extraneous offense evidence in her closing argument. Appellant's counsel argued the State did not prove at least some of the extraneous offenses beyond a reasonable doubt. Appellant's counsel concluded her closing argument by asking the jury to not impose a life sentence but to consider the lower part of the punishment range. The jury found both enhancement paragraphs true and assessed appellant's punishment at 45 years in prison.

We conclude appellant was not egregiously harmed by the trial court's omission of an instruction that appellant's commission of the extraneous offenses had to be proven beyond a reasonable doubt. We reach this conclusion for several reasons. One significant reason is that during closing argument, both sides told the jury that the State was required to prove the extraneous offenses beyond a reasonable doubt before the jury could consider them in making their decision on appellant's punishment. This fact supports a determination that appellant was not egregiously harmed by the trial court's omission of the reasonable doubt instruction. *See Jones v. State*, 111 S.W.3d 600, 610 (Tex. App.—Dallas 2003, pet. ref'd) (holding no egregious harm in part because defendant's counsel told jury during closing argument that burden of proving extraneous offenses was on the State).

In addition, during the punishment phase, the State introduced the testimony of each extraneous offense victim as well as the testimony of the police who investigated each extraneous offense. Each of these witnesses' testimony identifying appellant as the person who committed the extraneous offenses was clear, direct, strong, and unimpeached. This extraneous offense evidence was of the same type and character as the evidence supporting the charged offense. Therefore, we conclude that the state of the evidence in the record weighs against a

determination that appellant suffered egregious harm from the lack of a reasonable doubt instruction. *See Martinez v. State*, 313 S.W.3d 358, 368 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding no egregious harm in part because extraneous offense evidence was clear, strong, direct, and unimpeached); *see also Sansom v. State*, 292 S.W.3d 112, 133–34 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding no egregious harm in part because evidence relating to extraneous offenses was of same character and strength as evidence supporting charged offense).[2]

It is also significant that the jury's chosen punishment of 45 years in prison fell well below life in prison—the maximum possible punishment available and the punishment sought by the State during its closing argument. As a result, we conclude the sentence imposed does not support a determination that appellant suffered egregious harm as a result of the trial court's error. *See Sansom*, 292 S.W.3d at 134 (holding no egregious harm in part because jury assessed punishment far below maximum available despite State's plea for maximum punishment); *see also Tabor v. State,* 88 S.W.3d 783, 789 (Tex. App.—Tyler 2002, no pet.) (holding no egregious harm when sentence was within punishment range for offense and prosecutor argued for longer sentence).

Given the totality of the evidence and the record as a whole, we hold the case for the punishment assessed was not made clearly and significantly more persuasive by the trial court's error in omitting the burden-of-proof instruction from the punishment phase jury charge. Because appellant did not establish that he suffered egregious harm as a result of the trial court's error in omitting the

---

[2] The State also points out that the punishment-phase charge included an instruction that "the burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." This instruction weighs neither for nor against a finding of egregious harm, however. *Martinez*, 313 S.W.3d at 367.

instruction, we overrule his second issue.

**III. None of appellant's arguments undermine the trial court's assessment of court costs against him.**

In his third issue, appellant argues that the trial court erred in assessing court costs against him because (1) the signed and certified Justice Information Management System ("JIMS") printout detailing costs is not a bill of costs that complies with Texas Code of Criminal Procedure Article 103.001; (2) there is no evidence the JIMS Cost Bill was considered by the trial court; (3) there is insufficient evidence supporting the amount of the assessment; and (4) assessing a specific amount of costs while failing to present him with a bill of costs in the trial court deprived him of his right to due process of law.

Another panel of this Court recently addressed precisely these arguments in another appeal. *See Meggs v. State*, No. 14-13-00128-CR, 2014 WL 3429294 (Tex. App.—Houston [14th Dist.] July 15, 2014, no pet. h.). Relying on the recent Court of Criminal Appeals opinions in *Cardenas v. State*, 423 S.W.3d 396, 398–99 (Tex. Crim. App. 2014), and *Johnson v. State*, 423 S.W.3d 385 (Tex. Crim. App. 2014), the *Meggs* panel rejected each argument. Because appellant's arguments challenging the trial court's assessment of court costs against him are identical to the arguments raised in *Meggs*, and the relevant facts of this case do not differ materially from those in *Meggs*, we reject each argument for the same reasons stated in *Meggs* and overrule appellant's third issue. *See Meggs*, 2014 WL 3429294, at *4–*5.

## CONCLUSION

Having overruled each of appellant's issues on appeal, we affirm the trial court's judgment.

/s/        J. Brett Busby
                  Justice

Panel consists of Justices McCally, Busby, and Donovan.

Do Not Publish — TEX. R. APP. P. 47.2(b).