**Opinion filed October 30, 2015**



## In The

# Eleventh Court of Appeals

_____

## No. 11-13-00302-CR

_____

## ALFRED LEE RICE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR41089**

### M E M O R A N D U M   O P I N I O N

The jury convicted Alfred Lee Rice of two offenses: aggravated assault with a deadly weapon and intoxication manslaughter.[1]  The trial court found two enhancement allegations for prior felony convictions to be "true" and assessed punishment at confinement for fifty years for the aggravated assault conviction and confinement for sixty years for the intoxication manslaughter conviction.  The trial

---

[1]Each offense had a different victim.

court ordered both terms of confinement to run concurrently and sentenced Appellant. Appellant raises four issues on appeal. We affirm.

## I. *The Charged Offenses*

The grand jury indicted Appellant for aggravated assault with a deadly weapon, a motor vehicle. The grand jury alleged that Appellant recklessly caused bodily injury to "Ivan Hearn[e]"[2] when Appellant operated a motor vehicle that struck Hearne. The grand jury also alleged that Appellant used and exhibited a deadly weapon, a motor vehicle, during the commission of the offense. A person commits the offense of aggravated assault with a deadly weapon when he recklessly causes bodily injury to another person and, in doing so, uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2014), § 22.02(a)(2) (West 2011).

The grand jury also indicted Appellant for intoxication manslaughter. The grand jury alleged that Appellant, while he was intoxicated, operated a motor vehicle occupied by Benita Harmon and that Appellant, by reason of his intoxication, caused the death of Harmon when his vehicle collided with Hearne's vehicle. A person commits the offense of intoxication manslaughter if the person operates a motor vehicle in a public place while intoxicated and, by reason of that intoxication, causes the death of another by accident or mistake. *Id.* § 49.08(a).

## II. *Evidence at Trial*

Appellant drove his vehicle, a Buick Roadmaster, northbound on Lamesa Road in Midland late one November night, and did so at a high rate of speed that was well in excess of the posted 35-mile-per-hour speed limit. Around the same time, Hearne drove his vehicle westbound on Walnut Street where he came to a stop

---

[2]We note that the indictment alleged injury against "Ivan Hearn." At trial, however, Ivan testified that he spelled his last name "Hearne." We will use the latter spelling throughout the rest of the opinion.

sign at the intersection of Walnut Street and Lamesa Road.[3]  After Hearne came to a complete stop, a vehicle passed by him as it traveled southbound on Lamesa Road. After the vehicle passed, Hearne looked both ways again and saw no traffic traveling from either direction on Lamesa Road.

Hearne began to cross Lamesa Road to continue westbound on Walnut Street, but he never got through the intersection.  As Hearne pulled into the intersection, he looked to his left and saw headlights very close.  The front of Appellant's vehicle collided with the driver's side of Hearne's vehicle.  Hearne next remembered a man awakening him while Hearne was still in his vehicle.  The man told Hearne that Hearne had been hit by a vehicle that "had to have been going about 100 when [it] hit [him]."  Hearne believed that he did not see the vehicle because it was traveling so fast.  Harmon, a passenger in Appellant's vehicle, sustained injuries in the collision and died shortly afterward.

Chad Simpson, a sergeant with the Midland Police Department, responded in less than a minute to the scene of the collision.  Another Midland police officer, Juan Gutierrez, also responded to the scene.  Sergeant Simpson testified that, as he neared Appellant's vehicle, he smelled an odor of alcohol; he also noted that, when he spoke to Appellant, Appellant's speech was slow and "very slurred."  Appellant admitted to Sergeant Simpson that he had been drinking.  Appellant and Hearne both were taken via ambulance to the hospital, but neither had suffered life-threatening injuries in the collision.  Officer Gutierrez testified that he smelled alcohol on Appellant's breath when he rode in the ambulance with Appellant.

Once Appellant was at the hospital, Clark Owen, an officer with the Midland Police Department, interviewed him.  Officer Owen testified that Appellant had a strong odor of alcohol on his breath, that his speech was slurred, and that he appeared

---

[3]There was no stop sign on Lamesa Road and no stop light at the intersection.

intoxicated. Appellant admitted to Officer Owen that he had been drinking, but Appellant claimed that he had not consumed enough to get him drunk. While officers interviewed Appellant at the hospital, Tami Hamill, a nurse, drew six vials of Appellant's blood.

Hamill testified that the first vial she filled was for the Midland Police Department. After she filled the first vial, she handed it directly to Officer Gutierrez. The first vial was sent to Marissa Silva, a chemist with the Texas Department of Public Safety laboratory in Midland. Silva performed a "whole blood" test on the blood and testified that Appellant's blood alcohol content was 0.258 grams of alcohol per 100 milliliters of blood present.

Hamill testified that she drew blood into the other five vials as ordered by emergency room physicians. These five vials were sent to hospital personnel, who conducted several tests including a "serum test" on the blood. The results of that test indicated that Appellant's blood alcohol level was 0.27.[4]

Richard Moore, an officer with the Midland Police Department and an expert in traffic collision reconstruction, conducted an investigation of the collision. Based on his investigation and expertise, Officer Moore created a "to-scale" diagram of the scene of the collision. After Officer Moore had completed his calculations on speed as part of his reconstruction of the collision, he concluded that, when the two vehicles collided, the speed of Appellant's vehicle was at least 78.01 miles per hour, while the speed of Hearne's vehicle was 17.17 miles per hour. Officer Moore further testified that the posted speed limit on Lamesa Road was 35 miles per hour and that the posted speed limit on Walnut Street was 30 miles per hour.

---

[4]The slightly different results from the blood analyses, as described by Hamill and found in the medical records of Appellant and as completed by Silva, are attributable to the different types of tests that were performed. Silva testified that she would expect a serum test, as used by the hospital, to reflect a slightly higher, but insignificantly different, amount of alcohol present than the "whole blood" test that Silva used to test Appellant's blood.

At trial, outside the presence of the jury, Officer Gutierrez testified that, before Appellant's blood was drawn, he read Appellant the statutory warnings on the DIC-24 form[5] that outlined the consequences of a refusal to submit to a breathalyzer test or to give a blood specimen. The record does not explicitly indicate that Appellant refused, but Officer Gutierrez testified that he relied on the mandatory blood draw statute[6] that directed a draw of Appellant's blood. Officer Gutierrez further testified that, even though he could have done so, he did not obtain a warrant for the blood draw. Instead, Officer Gutierrez chose to rely solely on the implied consent provision of the Transportation Code.

## III. *Issues Presented*

Appellant asserts that there was insufficient evidence to prove that Appellant was intoxicated at the time of the collision and that, as such, the evidence was insufficient to support his conviction for intoxication manslaughter. Second, he asserts that the trial court erred when it admitted evidence of an illegal blood draw conducted without a warrant or an applicable exception to the warrant requirement. In his third and fourth issues, he asserts that the State engaged in improper bolstering during closing argument and made other improper comments during its closing argument.

## IV. *Standards of Review*

We review the sufficiency of the evidence under the standard of review set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the

---

[5]A DIC-24 form is a Department of Public Safety form that provides the warnings outlined in Section 724.015 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.015 (West Supp. 2014).

[6]*See id.* § 724.012(b) (West 2011).

evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

We review the admission or exclusion of evidence for an abuse of discretion. *Powers v. State*, 165 S.W.3d 357, 359 (Tex. Crim. App. 2005) (citing *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996)). Under an abuse of discretion standard, we will reverse a trial court's decision only if the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Montgomery v. State*, 810 S.W.2d 372, 390–92 (Tex. Crim. App. 1991). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* at 391.

## V. *Discussion and Analysis*

We address Appellant's first and second issues and then collectively address his third and fourth issues.

### A. *Issue One: Sufficiency of the Evidence*

Appellant contends that the State adduced insufficient evidence to convict him of intoxication manslaughter because there was insufficient evidence that he was intoxicated at the time he operated his vehicle. Appellant asserts that he never consented to the blood draw, and he implies that, without that evidence, he could not have been convicted of intoxication manslaughter. The State asserts that it proved, with sufficient evidence, a temporal link between Appellant's driving and his intoxication.

The State correctly notes that it must prove a temporal link between a defendant's intoxication and his driving. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). But "proof of the precise time of the accident or of driving

6

is not the *sine qua non* of driving while intoxicated." *Kennemur v. State*, 280 S.W.3d 305, 314 n.8 (Tex. App.—Amarillo 2008, pet. ref'd) (citing *Zavala v. State*, 89 S.W.3d 134, 139 (Tex. App.—Corpus Christi 2002, no pet.)).  There must be proof from which the jury can conclude that, at the time of the driving in question, the defendant was intoxicated.  *Zavala*, 89 S.W.3d at 139.  Proof can be from direct or circumstantial evidence, and the latter is as probative as the former; the standard of review for both is the same.  *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  And a conviction can be supported solely by circumstantial evidence. *Kuciemba*, 310 S.W.3d at 462 (citing *Guevara*, 152 S.W.3d at 49).

Hearne testified that he stopped at the intersection, looked both ways after a vehicle passed, and then pulled out into the intersection.  Appellant drove his vehicle at more than twice the legal speed limit and collided with Hearne's vehicle.  There were no skid marks from Appellant's vehicle at the scene of the collision that would have indicated he braked before the collision.  Harmon suffered severe injuries from the collision, and Dr. Kyungho Scott Choi, an emergency room physician, pronounced her dead.  She had severe damage to a great blood vessel that either came into or went out of her heart, she had no pulse, and an X-ray showed fluid in her left chest cavity.

Sergeant Simpson noted that Appellant's speech was slow and "very slurred," as did Officer Owen.  Sergeant Simpson smelled an odor of alcohol on Appellant, as did Officer Gutierrez, Officer Owen, and Doctor Choi.  Appellant admitted to Sergeant Simpson and Officer Owen that he had been drinking. *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979) (as a general rule, the testimony of an officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication for the offense of driving while intoxicated); *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.]

2000, pet. ref'd). And there was additional evidence of intoxication. Hamill testified that hospital personnel conducted a "serum test" and that the results indicated that Appellant's blood alcohol level was 0.27, well above the 0.08 limit for proof of intoxication. Silva performed a "whole blood" test and testified that Appellant's blood alcohol content was 0.258 grams of alcohol per 100 milliliters of whole blood present.

A reviewing court may not reevaluate the weight and credibility of the evidence and substitute its own judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The trier of fact is the sole judge of the weight and credibility of the evidence. *Brooks*, 323 S.W.3d at 899 (citing *Jackson*, 443 U.S. at 319, 326). We have reviewed the record, and the jury, as the sole arbiter of the facts, believed the testimony of the police officers and others. We must presume that the jury resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). There was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant was intoxicated at the time he operated his vehicle and collided with Hearne's vehicle. When this occurred, Appellant injured not only Hearne and himself as a result of his intoxication, but he also injured Harmon, who later died from those injuries. Therefore, the evidence supports Appellant's conviction for the offense of intoxication manslaughter. We overrule Appellant's first issue.

### B. Issue Two: Warrantless Blood Draw

Appellant argues that "the search and taking of [his] blood was unconstitutional and improper" and that the trial court erred when it admitted evidence derived from that illegal search. If the warrantless mandatory blood draw violated Appellant's rights under the Fourth Amendment, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not

contribute to his conviction or punishment. TEX. R. APP. P. 44.2(a); *see Neder v. United States*, 527 U.S. 1, 15–18 (1999); *Chapman v. California*, 386 U.S. 18, 23–24 (1967); *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (*Chapman* test codified in Rule 44.2(a)); *see also Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001) (harmless error review under Rule 44.2(a)); *Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008) (harmless error analysis under Rule 44.2(a)).

The goal of the reviewing court is to "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *Neal*, 256 S.W.3d at 284 (quoting *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003)) (internal quotation marks omitted). Some factors to review may include: (1) the importance of the inadmissible evidence; (2) whether the inadmissible evidence was cumulative of other admissible evidence; (3) the strength of the State's case; and (4) the State's emphasis on the inadmissible evidence. *See Clay*, 240 S.W.3d at 904; *Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006). The reviewing court should also consider any factor that may shed light on the probable impact of the trial court's error on the minds of average jurors. *Davis*, 203 S.W.3d at 852. Another factor is whether other evidence that is substantially similar to the inadmissible evidence was admitted at trial. *Meggs v. State*, 438 S.W.3d 143, 147 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

Even if we assume, without deciding, that the blood draw done for the Midland Police Department, without a warrant, was erroneously admitted into evidence and that such evidence was both important and emphasized, the error is nonetheless harmless. *See Meggs*, 438 S.W.3d at 147. In *Meggs*, DNA evidence on the defendant's pants was similar to other DNA evidence found at the crime scene. *Id.* There, our sister court held that, even if for the sake of argument there was an error, such error was harmless beyond a reasonable doubt. *Id.* Hamill drew

Appellant's blood at the hospital at the orders of the emergency room physicians for the purpose of medical diagnosis and treatment. Appellant's medical records included the results of the serum blood test conducted by the hospital, and those records were admitted at the beginning of the trial without objection by Appellant. Later, Hamill testified, also without objection by Appellant, that the results of the serum test indicated that Appellant's blood alcohol level was 0.27.

Absent the testimony of Silva, the blood alcohol test results from Appellant's medical records and the testimony of Hamill, which were both admitted without objection, were properly before the jury. *State v. Hardy*, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997) (blood draw by private actor—hospital— does not violate Fourth Amendment); *see also Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (where inadmissible evidence was admitted without objection by defendant, no reversible error occurs). With the serum blood test evidence already before the jury and the other evidence previously outlined, including Appellant's actions and physical condition at the time of the collision as well as his post-collision statements, we conclude that any error in the admission of Silva's testimony and other evidence related to the first vial of blood drawn did not contribute to Appellant's conviction because the result of the trial would have been the same. Therefore, we can say beyond a reasonable doubt that the blood draw evidence taken for the Midland Police Department did not contribute to Appellant's conviction. *See* TEX. R. APP. P. 44.2(a); *Meggs*, 438 S.W.3d at 147. We overrule Appellant's second issue.

*C. Issues Three & Four: Bolstering and Improper Comments*

Appellant asserts that the State engaged in improper bolstering of its case in its closing argument when the prosecutor remarked, "Except for one thing, and that's that that presumption of innocence stops as soon as we started presenting evidence." Appellant also complains that the State made additional improper comments in its closing argument.

The State errs when it argues that the jury should believe a witness simply because the prosecutor does. *See Gardner v. State*, 730 S.W.2d 675, 698 (Tex. Crim. App. 1987). This type of argument is improper because it attempts to bolster the credibility of a witness through unsworn testimony by the prosecutor. *See Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981). But a prosecutor may argue his opinion concerning a witness's credibility or the truth of a witness's testimony if the opinion is based on reasonable deductions from the evidence and does not constitute unsworn testimony. *Wolfe v. State*, 917 S.W.2d 270, 281 (Tex. Crim. App. 1996); *McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985). In addition, a prosecutor may argue about the credibility of a witness if the defendant invited such argument and the prosecutor's arguments respond to the defendant's argument. *Chapman v. State*, 503 S.W.2d 237, 238 (Tex. Crim. App. 1974).

To preserve a claim that the prosecutor has injected his or her personal opinion into the case, the defendant must object. *Valdez v. State*, 2 S.W.3d 518, 521 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Likewise, to preserve any error based on improper jury argument, the defendant must object to the argument and pursue the objection until an adverse ruling is made by the trial court. TEX. R. APP. P. 33.1(a); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); *Hinojosa v. State*, 433 S.W.3d 742, 761 (Tex. App.—San Antonio 2014, pet. ref'd). The objection must be "a timely, specific objection." *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). Appellant failed to object during the closing arguments made by the State. Appellant has waived his complaints raised in Issues Three and Four on appeal. *See* TEX. R. APP. P. 33.1(a); *Mendez*, 138 S.W.3d at 341; *Hinojosa*, 433 S.W.3d at 761. We overrule Appellant's third and fourth issues.

## VI. *Conclusion*

We hold that there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant was intoxicated at the time he operated a motor

vehicle that collided with Hearne's vehicle and that, as a result, he injured Hearne and killed Harmon. We also hold that, even if the evidence from the blood draw for the first vial of blood was erroneously admitted, that error is harmless because Appellant's medical records, which included the hospital's serum blood test, were admitted at the beginning of trial without objection. In addition, Hamill testified, without objection, about the results of a serum blood test, a test that was ordered by physicians for the purpose of medical diagnosis and treatment of Appellant. We further hold that Appellant waived his complaints about improper bolstering during closing argument and other improper comments made by the State during closing argument. Finally, we note that intoxication is not an element of aggravated assault with a deadly weapon, and Appellant has not challenged the sufficiency of the evidence on that conviction. We overrule all of Appellant's issues on appeal.

## VII. *This Court's Ruling*

We affirm the judgments of the trial court.


MIKE WILLSON

JUSTICE


October 30, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

12