# 1505-15

NO. PD-1505-15

ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 28 2015

Abel Acosta, Clerk

ALFRED LEE RICE,
                    Petitioner,

V.

THE STATE OF TEXAS,
                    Appellee,

**PETITION FOR DISCRETIONARY REVIEW**

FILED IN
COURT OF CRIMINAL APPEALS

DEC 28 2015

Abel Acosta, Clerk

ON APPEAL FROM THE 11TH
COURT OF APPEALS,
EASTLAND, TEXAS
CAUSE NUMBER # 11-13-00302-CR

ALFRED LEE RICE
TDCJ-ID NO. # 1888258
ALLEN B. POLUNSKY UNIT
3872 FM 350 SOUTH
LIVINGSTON, TEXAS 77351

ORAL ARGUMENTS REQUESTED

## IDENTITY OF JUDGE AND COUNSEL'S

TRIAL JUDGE:              HONORABLE GEORGE D. GILLES
142nd DISTRICT COURT
MIDLAND COUNTY, TEXAS

DISTRICT ATTORNEY:     TERESA CLINGMAN
500 N. LORRAINE
MIDLAND COUNTY 79701

TRIAL COUNSEL:        MARK DETTMAN
415 W. WALL ST.
MIDLAND, TEXAS 79701

APPEAL COUNSEL:       WAYNE FROST
203 W. WALL ST. Suite # 205
MIDLAND, TEXAS 79701

# TABLE OF CONTENTS

IDENTITY OF JUDGE AND COUNSELS.................................... i

TABLE OF CONTENTS ............................................... ii

INDEX OF AUTHORITIES............................................ iii

STATEMENT REGARDING ORAL ARGUMENT ............................... 1

STATEMENT OF THE CASE .......................................... 1,2

STATEMENT OF PROCEDUAL HISTORY.................................. 2

GROUNDS FOR REVIEW:

   GROUND NUMBER ONE........................................... 2

   DID THE 11TH COURT OF APPEALS DECISION OF PETITIONER CLAIM THAT
THERE WAS INSUFFICIENT LEGAL EVIDENCE IN CONFLICTING WITH DECISIONS
OF THE COURT OF CRIMINAL APPEALS ON THE SAME ISSUE.

   GROUND NUMBER TWO.......................................... 6

   WHETHER THE 11TH COURT OF APPEALS DECIDED AN IMPORTANT QUESTION
OF STATE AND FEDERAL LAW IN A WAY THAT CONFLICT'S WITH   APPLICABLE
DECISIONS OF THE COURT OF CRIMINAL PROCEDURE AND THE U.S. SUPREME COURT

   GROUND NUMBER THREE........................................ 8

   WHETHER THE 11TH COURT OF APPEALS DECIDED AN IMPORTANT QUESTION
OF STATE AND FEDERAL LAW ON PETITIONER'S CLAIM THAT THE STATE   IM-
PROPERLY ENGAGED IN BOLSTERING IN A WAY THAT WITH DECISIONS BY THIS COURT

   GROUND NUMBER FOUR ........................................ 10

   RESTATING GROUND NUMBER THREE

CONCLUSION / PRAYER............................................. 12

INMATE DECLARATION............................................. 13

CERTIFICATE OF SERVICE ........................................ 13

## INDEX OF AUTHORITIES

**CASES:**

BERGER V. UNITED STATES:
295 U.S. 78 (1935) ........................................ 11

CANTU V. STATE:
939 S.W. 2d 627, 633 (Tex. Crim. App. 1994) .............. 11

COFFEY V. STATE:
435 S.W. 3d 834 (Tex. App. Texarkane 2014) .............. 8

COOK V. STATE,
844 S.W. 2d 687, 727 (Tex. Crim. App. 1998) ............. 12

ESTER V. TEXAS:
381 U.S. 532, 540, 94 S. Ct. 1628, 1631, 14 L. ed. 2d 543 (1965) ..... 10

IN RE WINSHIP:
397 U.S. 358, 364 (1970) .............................. 4,6,9,

JACKSON V. VIRGINIA:
443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed 2d 560 (1979) ...... 9

MATA V. STATE:
46 S.W. 3d 902 (Tex. Crim. App. 2001) ................... 3,4,6,

MOSLEY V. STATE:
348 S.W. 3d 435 (Tex. App. Austin 2011) ................ 7

MINNESOTA V. CARTER:
529 U.S. 83, 119 S. Ct. 469, 142 L. Ed 2d 378 (1998) ...... 5,6

MISSOURI V. McNEELY:
133 S. Ct. 1552 (2013) ................................. 7

MUMPHERY V. STATE:
155 S.W. 3d 651 (Tex. App. Texarkana 2005) ............. 9

STATE V. WEBER:
347 S.W. 3d 381 (Tex. App. San Antonio (2008) .......... 8

ROUSSEAU V. State:
855 S.W. 2d 666, 681 (Tex. Crim. App. 1993) ............ 9

TEMPLE V. STATE:
342 S.W. 3d 572 (Tex. App. Houston [14TH Dist] 2010) ..... 11

TODD V. STATE:
598 S.W. 2d 286 (Tex. Crim. App. 1980) ................ 12

UNITED STATES V. KOJAYAN:
8 F. 3d 1315, 1323 (9TH Cir. 1993) .................... 11

# INDEX OF AUTHORITIES CONT.

WOOD V. STATE:
13 S.W. 3d 100, 102 (Tex App. Texarkana 2000 pet. Ref'd)....    **10**


**TEXAS CONSTITUTION ART. 1, Sect. 9** ............................    7

TRANSPORTATION CODE 724.012................................    7

**ABA MODEL RULE OF PROFESSIONAL CONDUCT 3.8**................    **11**

ABA MODEL RULE OF PROFESSIONAL CONDUCT 4-4,1 .............    **11**

NO. _____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

_____

ALFRED LEE RICE,
                    Petitioner,

V.

THE STATE OF TEXAS,
                    Appellee,

_____
_____


## PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE COURT OF APPEALS:

Petitioner respectfully presents his Petition for Discretionary Review (PDR) seeking relief for a decision by the 11TH Court of Appeals that contrary to decisions by this Court on the same issue.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner respectfully ask that Oral Arguments be held in this proceeding in order to amplify the issues presented in this petition.

## STATEMENT OF THE CASE

The facts are as laid out in petition were that on or about November 16, 2012, petitioner was driving his automobile on Lamesa Rd. in Midland County, Texas. Also, there was a passenger

1.

in the car by the name of Benita Harmon, who died as a result from injuries that occurred from an accident when petitioner struck an automobile at Walnut Lane and Lamesa Rd., when a car driven by Ivan Hearnes (RR 7:102). Hearne was injured, but survived (RR 7:25-26). Petitioner allegedly had a blood-alcohol level of .271 according to a blood-draw taken at the hospital without his consent. It alleged that petitioner was traveling 78 miles per hour in a 35 mile per hour zone (RR 7:37, 184). Petitioner had the right of way, his head-lights were on, and he had the right of way regardless of his speed. The accident was actually cause by Hearnes, because there's no evidence of anything that blocked his view of petitioner's vehicle.

## PROCEDUAL HISTORY

Petitioner was charged with "Aggravated Assault with a Deadly Weapon," in Count One of a Four Count indictment, and "Intoxication Manslaughter in Count Four. the court assessed punishment at 50 years confinement, and 60-years in Count Two. Petitioner appealed to the 11TH Court of Appeals, Cause # 11-13-00302-CR. The conviction was affirmed on, October 30,2015. No rehearing was sought, on the 18 day of December. Petitioner forwards this Petition for Discretionary Review to the Court of Criminal Appeals in Austin, Texas by First Class U.S. Mail.

## GROUND FOR RELIEF NO. ONE

DID THE 11TH COURT OF APPEALS DECISION OF PETITIONER CLAIM THAT THERE WAS INSUFFICIENT LEGAL EVIDENCE IN CONFLICT WITH DECISIONS OF THE COURT OF CRIMINAL APPEALS ON THE SAME ISSUE.

Petitioner was arrested for DWI based on contents of (BAC) results that was illegally taken, he was released two weeks later,

2.

but later arrested and charged with Aggravated Assault with a Deadly Weapon, and Intoxication Manslaughter using the same (BAC) test results.

Petitioner argued on appeal that, the law states that to obtain a conviction for DWI, there must be proof that at the time of the accident, was petitioner intoxicated. the State abandoned the "intentional and knowing" portions of Count One, the aggravated assault with a deadly weapon.

The 11TH Court of Appeals overlooked an unassigned fact, "Actus Non Facit Reum Nisi Mens Sit Rea," an act does not make the actor guilty unless the mind be guilty; that is unless the intent be criminal, the intent, and the act must both concur to constitute the crime, (citing Lord Keyon, C.J. 7. Term 514; English Common Law).

The appellant counsel failed to challenge that issue, but focused on the fact that there was no proof to show that petitioner was intoxicated at the time of the accident.

There was no evidence to prove that at the time of the accident, whether petitioner was at .08 or below, nor whether it was greater. In Mata V. State, 46 S.W. 3d 902 (Tex. Crim. App. 2001), the Texas Court of Criminal Appeals explained "retrograde extrapolation is the computation back in time of the blood alcohol level that is, the estimation of the level at the time of driving based on a test result from some later time." Id. 908. The court stated that a particular absorption rate depends on a variety of factors, including inter alia, food in the stomach, gender, weight, age amount consumed, and period of consumption. Id.

3.

at 909-10.

The State lacked this vital information which was necessary to get an accurate extrapolation result. Considering time of the accident, and the period of time it took before the illegal blood draw. Such information was vital, yet the State failed to present evidence that proved petitioner was intoxicated at the time of the accident as required by due process. See In Re Winship, 397 U.S. 358, 364 (1970).

The smell of alcohol on petitioner's breath, slurred speach, or bloodshot eyes only demonstrated a clue of intoxication. Looking at the facts of this case show that applicant was just trapped inside of his car. also, he was not consciously aware of thing at that moment because of the accident. And he was confused as a result, which didn't mean he lost the normal use of his faculties as a result of being intoxicated.

The 11TH Court of Appeals erred by not agreeing that the culpable mental state related to the conduct elements involved in this particular offense was not proven because as alcohol is consumed, it passes from the stomach and intestines into the blood, a process referred to as absorption. When the alcohol reaches the brain and nervous system, the characteristic signs of intoxication begin to show. Mata V. State, 46 S.W. 3d at 909.

Alcohol concentration raises at least more than a hour and a half after the last drink. In other words a person could possible be as much as a .06 less than a .09, two hours and ten minutes earlier, but had a retrograde extrapolation determination been considered in this case, alone with the requirements to measure

4.

the absorption rate, the results would have shown that petitioner may have had a drink, but was not intoxicated when the driver pulled out in front of him, because looking at all the facts, it clearly show that the driver of the other vehicle more than likely was doing something that distracted him from seeing petitioner approaching the intersection, or possibly sleep. Both vehicles are equiped with what's known as the black box, which keeps data to show what occurred (10) seconds before the accident. This was vital to show if the driver actually stopped at the stop-sign or to actually determine the speeds both drivers were going. The accident was caused when the driver pulled into the intersection when petitioner was approaching with his head lights on. Even though the 11TH Court of Appeals agreed that petitioner's (BAC) level was consistent with someone being intoxicated while at the hospital, it does not support a finding that the (BAC) at the time of the accident was consistent enough to show what his (BAC) was at the time of the accident. Article 6701, 1-5 § 1 (Vernons).

Petitioner argued on appeal also about voluntariness of the blood draw, bringing it to the attention of the 11TH Court of Appeals that he never signed a DIC-24 card, nor give consent for the blood draw.

The 11TH Court of Appeals decision should be reversed based on the fact that it fail to meet the due process requirements that mandatory by under the Fourteenth Amendment of the United States Constitution, requiring proof beyond a reasonable doubt, it conflicts with the Supreme Court's decision in Minnesota V. Carter,

5.

529 U.S. 83. Also the Texas Court of Criminal Appeals decision in Mata V. State, 46 S.W 3d 902. A careless driver cannot pull in front of a speeding car, cause an accident, and not be considered guilty just because the driver of the other vehicle smelled like alcohol, because even if petitioner had been going the speed limit, the fact still would remain the same, which is, the driver was distracted, and pulled out in front of the petitioner causing the accident, and the 11TH Court of Appeals decision should be reversed.

## GROUND FOR RELIEF NO. TWO

WHETHER THE 11TH COURT OF APPEALS DECIDED AN IMPORTANT QUESTION OF STATE AND FEDERAL LAW IN A WAY THAT CONFLICT'S WITH APPLICABLE DECISION'S OF THE CODE OF CRIMINAL PROCEDURE AND THE U.S. SUPREME COURT.

The Court of Appeals erred their review of petitioner's claim where he challenged the admission of test results of an illegal blood draw, in which he argues the blood specimans were illegally drawn.

The Fourth Amendment prohibits unreasonable searches and seizures. Minnesota V. Carter, 525 U.S. 83, 88, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998). The Supreme Court has also agreed that it's a violation of the Fourth, and Fifth Amendment.

Petitioner never agreeded to giving a blood speciman, nor sign the DIC-24 warning. Petitioner argued that his conviction was based solely upon the lack of evidence resulting in the denial of due process as required by the United States Constitution in both the Sixth and Fourteenth. See In Re Winship, 397 U.S. 358, 364 (1970).

6.

The Court of Appeals was asked whether the blood draw lawful or nor, citing <u>Missouri V. McNeely</u>, 133 S. Ct. 1552 (2013), where the court stated that "... where officers can reasonably obtain a search warrant for a blood draw without significantly undermining the efficacy of the search, the 4TH Amendment mandates they do so." The officers had sufficient opportunities to obtain a search warrant prior to obtaining petitioner's blood, because prior to him being transported by EMS to the hospital, officers suspected he was intoxicated, and had ample time to seek a warrant while he was being transported to the medical facility.

The records show that the defense counsel did object to State presenting the blood test results (RR 7:200). The objection was based on the fact that, applicant never consented to a blood draw, there was no warrant. Also, there was nothing suggesting the "efficacy" of obtaining a search warrant would undermine the blood.

Drawing blood from a suspect is search and seizure within the scope of the Fourth Amendment to the United States Constitution, and Article 1, Section 9 of the Texas Constitution. V.T.C.A. Transportation Code 724.012 (b)(1).

The records established that petitioner was in the hospital following the automobile collision when his blood was drawn without his affirmative consent, and not being under arrest at the time his blood was drawn. <u>Mosely V. State</u>, 348 S.W. 3d 435 (Tex. App. Austin 2011).

The Court of Appeals in this case failed to consider decisions made by their sister court's on this issue, and concede to the

7.

fact that the officers could not constitutionally do a blood draw absent consent, or a warrant. The implied consent law provides a framework for driving-while-intoxicated defendants absent a search warrant which was not followed here, there was no exigent circumstances, there was no arrest at the time, and officers lacked probable cause to do a blood draw, content (BAC) test without petitioner consent. <u>Coffey V. State</u>, 435 S.W. 3d 834 (Tex. App. Texarkana 2014); <u>State V. Weber</u>, 347 S.W. 3d 381 (Tex. App. San Antonio 2008). The question of whether police employed reasonable means, and reasonable procedures in taking petitioner's blood, the answer would be no, because their actions cannot be justified requiring the court to reverse the 11TH Court of Appeals decision, base on several fact's including the fact that petitioner was not officially charged with aggravated assault with a deadly weapon, or intoxication manslaughter, he was arrested on driving while intoxicated, and released two-weeks later. The penalty for refusing (BAC) testing at that time did not require or give officers authority to do a blood draw without consent, it would have resulted in suspension of his driver's license, or possible jail time.

<b>GROUND FOR RELIEF NO. THREE</b>

<u>WHETHER THE 11TH COURT OF APPEALS DECIDED AN IMPORTANT QUESTION OF STATE AND FEDERAL LAW ON PETITIONER'S CLAIM THAT THE STATE IMPROPERLY ENGAGED IN BOLSTERING IN A WAY THAT CONFLICT WITH DECISIONS BY THIS COURT.</u>

Petitioner presented facts to the 11TH Court of Appeals sufficiently pointing out the claim he made that during closing remarks the prosecutor began improperly bolstering by testifying as

8.

a fact-witness.

The records show that in one instance the prosecutor told the jury that, "when you have all the evidence in front of you the presumption of innocence goes away as all the evidence continue to pile up." (RR 9:107), petitioner also argued that the prosecutor argued a rhetorical question of whether petitioner was using and/or exhibiting a deadly weapon, then answered his own question for the jury stated "absolutely" (RR 9:108).

Petitioner provided case law established by this Court which states that a prosecutor may not bolster their case during summations, which is fundamental law, also a prosecutor may not give personal opinions because jurors may assume or infer that such opinion is based on information not known to them, but is known to the prosecutor.

Before a trial begin, most jury members are taunted because of the shows on television such as law and order; CSI; and tends to think that because a person has been arrested and charged with a crime they did something, but in the real world that's not the case. In this case the prosecutor took advantage of that by improperly bolstering, leading the jury to believe petitioner is guilty absent the proof required by the U.S. Supreme Court in In Re Winship, 397 U.S. 358 (1970). See also Jackson V. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed 2d 560 (1979).

The law states that bolstering occurs when one party introduce evidence for purpose of adding credence or weight to earlier unimpeached offered by the same party. Mumphrey V. State, 155 S.W. 3d 651 (Tex. App. Texarkana 2005); Rousseau V. State, 855 S.W. 2d

9.

666, 681 (Tex. Crim. App. 1993). See also <u>Wood V. State</u>, 13 S.W. 100, 102 (Tex. App. Texarkana 2000 pet. Ref'd).

<u>GROUND FOR RELIEF NO. FOUR</u>

<u>RESTATE GROUND NUMBER THREE: WHETHER THE 11TH COURT OF APPEALS DECIDED AN IMPORTANT QUESTION OF LAW IN A WAY THAT CONFLICTS WITH BOTH STATE AND U.S. SUPREME COURT DECISIONS</u>

Petitioner continues to point out the error by the prosecutor during closing argument which cannot be said to had been harmless, because petitioner presented the 11TH Court of Appeals with records, and references showing the misconduct by the prosecutor.

The records shows the prosecutor improperly told the jury that petitioner was "absolutely" guilty of reckless driving, "no doubt about it" (RR 9:108-109), he also stated "you're gonna find him guilty of Count 1." (RR 9:108-109), and "you sure as heck better find him guilty of regular manslaughter, because he did it." (RR 9:118).

Petitioner pointed out those statements in the previous ground because the error not only bolstering, but improper, because it highly prejudicial. The prosecutor took the position as a fact witness by clearly crossing the lines of the four acceptable parameters of acceptable closing argument stating as a fact, "He's guilty." (RR 9:118).

In <u>Ester V. Texas</u>, 381 U.S. 532, 540, 94 S. Ct. 1628, 1631, 14 L. Ed 2d 543 (1965), the U.S. Supreme Court stated "a prosecutor should refrain from arguments which would divert the jury from its duty to decide the case on the evidence," which was a requirement ignored in this case. Also ignored by the 11TH Court of Appeals. The solemn purpose of endeavoring to ascertain truth

... is the sine qua non of a fair trial.

The summation of the case by the prosecutor cut to the very heart of the Due Process Clause by diverting the jury's attention from the ultimate question of guilt/innocence which was the central concern.

The 11TH Court of Appeals as part of the Department of Justice has an obligation to prevent such prosecutorial misconduct. See, United States V. Kojayan, 8 F. 3d 1315, 1323 (9th Cir. 1993). See also, Berger V. United States, 295 U.S. 78 (1935). Their job is not to just win, but to win fairly, staying within the rules. Berger, 295 U.S. at 88.

The 11Th Court of Appeals decided on a matter of law in a manner that's contrary to decisions by the United States Supreme Court on the same issue. The prosecutor in this case acted with flagrant misbehavior, presenting substantial prejudice to the outcome of the case violating Model Rule 3.8, and 4-4,1 of the American Bar Association Model Rules of professional Conduct, depriving petitioner's Sixth and Fourteenth Amendment rights guaranteed by the United States Constitution.

The prosecutor's improper arguments which were precipitated by overzealous prosecution deprived petitioner of substantial rights. Temple V. State, 342 S.W. 3d 572 (Tex. App. Houston [14TH Dist] 2010). In light of the records as a whole, the arguments by the prosecutor was extreme, and manifestly improper, violative of a mandatory statute, the argument was willful and a calculated effort on the part of the State to deprive petitioner of a fair and impartial trial. Cantu V. State, 939 S.W. 2d 627, 633 (Tex.

11.

Crim. App. 1999); Cooks V. State, 894 S.W. 2d 697, 727 (Tex. Crim. App. 1992); Todd V. State, 598 S.W. 2d 286 (Tex. Crim. App. 1980).

Reversal is required in this case as a result of the misconduct by the prosecutor.

## PRAYER

Petitioner pray that the Court sustain the petition base on the fact that the 11TH Court of Appeals decision was wrong because its clear the blood draw was done prior to charges being formally filed, and absent consent or a warrant. There was no DIC-24 card signed agreeing to allow (BCA) testing., which violated petitioners Fourth Amendment protection. Also, there's no evidence that show's petitioner was at fault for the accident, but there is evidence that proved he T-Boned a vehicle that pulled out in front of him. Regardless of his speed, the only evidence counsel's were not seeking was, what distracted the driver causing him to pull in front of petitioner's vehicle. His phone records, or phone were examined to determine whether or not he was texting or talking when he pulled away from a stop sign in front of petitioner's vehicle.

The prosecutor sought to win only, not seek justice which was shown by the improper argument's conveying his personal belief that petitioner was guilty to bolster the credibility of his case. The facts are clear in this case that one, intoxicated or not, it didn't cause the driver to pull out in front of his vehicle, or cause him to be distracted, this case should be reversed and remanded with an order for acquittal.

12.

*Alfred Lee Rice # 1888258*

Alfred Lee Rice # 1888258

## INMATE DECLARATION

I, Alfred L. Rice , an inmate of the Texas Department of Criminal Justice, presently at the Allen Polunsky Unit, declare on this the 18 day of December 2015, that all claims presented in this petitioner are true and correct.

*Alfred Lee Rice # 1888258*

Alfred Lee Rice # 1888258

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Petition for Discretionary Review (PDR) was sent by First Class Mail to the 11Th Court of Appeals on this the 18 day of December 2015.

*Alfred Lee Rice # 1888258*

Alfred Lee Rice # 1888258

Alfred Lee Rice # 1888258
Allen B. Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351

13.



In The

# Eleventh Court of Appeals

No. 11-13-00302-CR

## ALFRED LEE RICE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 142nd District Court

Midland County, Texas

Trial Court Cause No. CR41089

## MEMORANDUM OPINION

The jury convicted Alfred Lee Rice of two offenses: aggravated assault with a deadly weapon and intoxication manslaughter.[1] The trial court found two enhancement allegations for prior felony convictions to be "true" and assessed punishment at confinement for fifty years for the aggravated assault conviction and confinement for sixty years for the intoxication manslaughter conviction. The trial

---

[1]Each offense had a different victim.

court ordered both terms of confinement to run concurrently and sentenced Appellant. Appellant raises four issues on appeal. We affirm.

## I. *The Charged Offenses*

The grand jury indicted Appellant for aggravated assault with a deadly weapon, a motor vehicle. The grand jury alleged that Appellant recklessly caused bodily injury to "Ivan Hearn[e]"[2] when Appellant operated a motor vehicle that struck Hearne. The grand jury also alleged that Appellant used and exhibited a deadly weapon, a motor vehicle, during the commission of the offense. A person commits the offense of aggravated assault with a deadly weapon when he recklessly causes bodily injury to another person and, in doing so, uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2014), § 22.02(a)(2) (West 2011).

The grand jury also indicted Appellant for intoxication manslaughter. The grand jury alleged that Appellant, while he was intoxicated, operated a motor vehicle occupied by Benita Harmon and that Appellant, by reason of his intoxication, caused the death of Harmon when his vehicle collided with Hearne's vehicle. A person commits the offense of intoxication manslaughter if the person operates a motor vehicle in a public place while intoxicated and, by reason of that intoxication, causes the death of another by accident or mistake. *Id.* § 49.08(a).

## II. *Evidence at Trial*

Appellant drove his vehicle, a Buick Roadmaster, northbound on Lamesa Road in Midland late one November night, and did so at a high rate of speed that was well in excess of the posted 35-mile-per-hour speed limit. Around the same time, Hearne drove his vehicle westbound on Walnut Street where he came to a stop

---

[2]We note that the indictment alleged injury against "Ivan Hearn." At trial, however, Ivan testified that he spelled his last name "Hearne." We will use the latter spelling throughout the rest of the opinion.

2

sign at the intersection of Walnut Street and Lamesa Road.[3] After Hearne came to a complete stop, a vehicle passed by him as it traveled southbound on Lamesa Road. After the vehicle passed, Hearne looked both ways again and saw no traffic traveling from either direction on Lamesa Road.

Hearne began to cross Lamesa Road to continue westbound on Walnut Street, but he never got through the intersection. As Hearne pulled into the intersection, he looked to his left and saw headlights very close. The front of Appellant's vehicle collided with the driver's side of Hearne's vehicle. Hearne next remembered a man awakening him while Hearne was still in his vehicle. The man told Hearne that Hearne had been hit by a vehicle that "had to have been going about 100 when [it] hit [him]." Hearne believed that he did not see the vehicle because it was traveling so fast. Harmon, a passenger in Appellant's vehicle, sustained injuries in the collision and died shortly afterward.

Chad Simpson, a sergeant with the Midland Police Department, responded in less than a minute to the scene of the collision. Another Midland police officer, Juan Gutierrez, also responded to the scene. Sergeant Simpson testified that, as he neared Appellant's vehicle, he smelled an odor of alcohol; he also noted that, when he spoke to Appellant, Appellant's speech was slow and "very slurred." Appellant admitted to Sergeant Simpson that he had been drinking. Appellant and Hearne both were taken via ambulance to the hospital, but neither had suffered life-threatening injuries in the collision. Officer Gutierrez testified that he smelled alcohol on Appellant's breath when he rode in the ambulance with Appellant.

Once Appellant was at the hospital, Clark Owen, an officer with the Midland Police Department, interviewed him. Officer Owen testified that Appellant had a strong odor of alcohol on his breath, that his speech was slurred, and that he appeared

---

[3]There was no stop sign on Lamesa Road and no stop light at the intersection.

3

intoxicated. Appellant admitted to Officer Owen that he had been drinking, but Appellant claimed that he had not consumed enough to get him drunk. While officers interviewed Appellant at the hospital, Tami Hamill, a nurse, drew six vials of Appellant's blood.

Hamill testified that the first vial she filled was for the Midland Police Department. After she filled the first vial, she handed it directly to Officer Gutierrez. The first vial was sent to Marissa Silva, a chemist with the Texas Department of Public Safety laboratory in Midland. Silva performed a "whole blood" test on the blood and testified that Appellant's blood alcohol content was 0.258 grams of alcohol per 100 milliliters of blood present.

Hamill testified that she drew blood into the other five vials as ordered by emergency room physicians. These five vials were sent to hospital personnel, who conducted several tests including a "serum test" on the blood. The results of that test indicated that Appellant's blood alcohol level was 0.27.[4]

Richard Moore, an officer with the Midland Police Department and an expert in traffic collision reconstruction, conducted an investigation of the collision. Based on his investigation and expertise, Officer Moore created a "to-scale" diagram of the scene of the collision. After Officer Moore had completed his calculations on speed as part of his reconstruction of the collision, he concluded that, when the two vehicles collided, the speed of Appellant's vehicle was at least 78.01 miles per hour, while the speed of Hearne's vehicle was 17.17 miles per hour. Officer Moore further testified that the posted speed limit on Lamesa Road was 35 miles per hour and that the posted speed limit on Walnut Street was 30 miles per hour.

---

[4]The slightly different results from the blood analyses, as described by Hamill and found in the medical records of Appellant and as completed by Silva, are attributable to the different types of tests that were performed. Silva testified that she would expect a serum test, as used by the hospital, to reflect a slightly higher, but insignificantly different, amount of alcohol present than the "whole blood" test that Silva used to test Appellant's blood.

At trial, outside the presence of the jury, Officer Gutierrez testified that, before Appellant's blood was drawn, he read Appellant the statutory warnings on the DIC-24 form[5] that outlined the consequences of a refusal to submit to a breathalyzer test or to give a blood specimen. The record does not explicitly indicate that Appellant refused, but Officer Gutierrez testified that he relied on the mandatory blood draw statute[6] that directed a draw of Appellant's blood. Officer Gutierrez further testified that, even though he could have done so, he did not obtain a warrant for the blood draw. Instead, Officer Gutierrez chose to rely solely on the implied consent provision of the Transportation Code.

### III. *Issues Presented*

Appellant asserts that there was insufficient evidence to prove that Appellant was intoxicated at the time of the collision and that, as such, the evidence was insufficient to support his conviction for intoxication manslaughter. Second, he asserts that the trial court erred when it admitted evidence of an illegal blood draw conducted without a warrant or an applicable exception to the warrant requirement. In his third and fourth issues, he asserts that the State engaged in improper bolstering during closing argument and made other improper comments during its closing argument.

### IV. *Standards of Review*

We review the sufficiency of the evidence under the standard of review set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the

---

[5] A DIC-24 form is a Department of Public Safety form that provides the warnings outlined in Section 724.015 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.015 (West Supp. 2014).

[6] *See id.* § 724.012(b) (West 2011).

5

evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

We review the admission or exclusion of evidence for an abuse of discretion. *Powers v. State*, 165 S.W.3d 357, 359 (Tex. Crim. App. 2005) (citing *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996)). Under an abuse of discretion standard, we will reverse a trial court's decision only if the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Montgomery v. State*, 810 S.W.2d 372, 390–92 (Tex. Crim. App. 1991). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* at 391.

## V. *Discussion and Analysis*

We address Appellant's first and second issues and then collectively address his third and fourth issues.

### A. *Issue One: Sufficiency of the Evidence*

Appellant contends that the State adduced insufficient evidence to convict him of intoxication manslaughter because there was insufficient evidence that he was intoxicated at the time he operated his vehicle. Appellant asserts that he never consented to the blood draw, and he implies that, without that evidence, he could not have been convicted of intoxication manslaughter. The State asserts that it proved, with sufficient evidence, a temporal link between Appellant's driving and his intoxication.

The State correctly notes that it must prove a temporal link between a defendant's intoxication and his driving. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). But "proof of the precise time of the accident or of driving

6

is not the *sine qua non* of driving while intoxicated." *Kennemur v. State*, 280 S.W.3d 305, 314 n.8 (Tex. App.—Amarillo 2008, pet. ref'd) (citing *Zavala v. State*, 89 S.W.3d 134, 139 (Tex. App.—Corpus Christi 2002, no pet.)). There must be proof from which the jury can conclude that, at the time of the driving in question, the defendant was intoxicated. *Zavala*, 89 S.W.3d at 139. Proof can be from direct or circumstantial evidence, and the latter is as probative as the former; the standard of review for both is the same. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). And a conviction can be supported solely by circumstantial evidence. *Kuciemba*, 310 S.W.3d at 462 (citing *Guevara*, 152 S.W.3d at 49).

Hearne testified that he stopped at the intersection, looked both ways after a vehicle passed, and then pulled out into the intersection. Appellant drove his vehicle at more than twice the legal speed limit and collided with Hearne's vehicle. There were no skid marks from Appellant's vehicle at the scene of the collision that would have indicated he braked before the collision. Harmon suffered severe injuries from the collision, and Dr. Kyungho Scott Choi, an emergency room physician, pronounced her dead. She had severe damage to a great blood vessel that either came into or went out of her heart, she had no pulse, and an X-ray showed fluid in her left chest cavity.

Sergeant Simpson noted that Appellant's speech was slow and "very slurred," as did Officer Owen. Sergeant Simpson smelled an odor of alcohol on Appellant, as did Officer Gutierrez, Officer Owen, and Doctor Choi. Appellant admitted to Sergeant Simpson and Officer Owen that he had been drinking. *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979) (as a general rule, the testimony of an officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication for the offense of driving while intoxicated); *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.]

2000, pet. ref'd). And there was additional evidence of intoxication. Hamill testified that hospital personnel conducted a "serum test" and that the results indicated that Appellant's blood alcohol level was 0.27, well above the 0.08 limit for proof of intoxication. Silva performed a "whole blood" test and testified that Appellant's blood alcohol content was 0.258 grams of alcohol per 100 milliliters of whole blood present.

A reviewing court may not reevaluate the weight and credibility of the evidence and substitute its own judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The trier of fact is the sole judge of the weight and credibility of the evidence. *Brooks*, 323 S.W.3d at 899 (citing *Jackson*, 443 U.S. at 319, 326). We have reviewed the record, and the jury, as the sole arbiter of the facts, believed the testimony of the police officers and others. We must presume that the jury resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). There was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant was intoxicated at the time he operated his vehicle and collided with Hearne's vehicle. When this occurred, Appellant injured not only Hearne and himself as a result of his intoxication, but he also injured Harmon, who later died from those injuries. Therefore, the evidence supports Appellant's conviction for the offense of intoxication manslaughter. We overrule Appellant's first issue.

*B. Issue Two: Warrantless Blood Draw*

Appellant argues that "the search and taking of [his] blood was unconstitutional and improper" and that the trial court erred when it admitted evidence derived from that illegal search. If the warrantless mandatory blood draw violated Appellant's rights under the Fourth Amendment, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not

contribute to his conviction or punishment. TEX. R. APP. P. 44.2(a); *see Neder v. United States*, 527 U.S. 1, 15–18 (1999); *Chapman v. California*, 386 U.S. 18, 23–24 (1967); *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (*Chapman* test codified in Rule 44.2(a)); *see also Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001) (harmless error review under Rule 44.2(a)); *Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008) (harmless error analysis under Rule 44.2(a)).

The goal of the reviewing court is to "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *Neal*, 256 S.W.3d at 284 (quoting *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003)) (internal quotation marks omitted). Some factors to review may include: (1) the importance of the inadmissible evidence; (2) whether the inadmissible evidence was cumulative of other admissible evidence; (3) the strength of the State's case; and (4) the State's emphasis on the inadmissible evidence. *See Clay*, 240 S.W.3d at 904; *Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006). The reviewing court should also consider any factor that may shed light on the probable impact of the trial court's error on the minds of average jurors. *Davis*, 203 S.W.3d at 852. Another factor is whether other evidence that is substantially similar to the inadmissible evidence was admitted at trial. *Meggs v. State*, 438 S.W.3d 143, 147 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

Even if we assume, without deciding, that the blood draw done for the Midland Police Department, without a warrant, was erroneously admitted into evidence and that such evidence was both important and emphasized, the error is nonetheless harmless. *See Meggs*, 438 S.W.3d at 147. In *Meggs*, DNA evidence on the defendant's pants was similar to other DNA evidence found at the crime scene. *Id.* There, our sister court held that, even if for the sake of argument there was an error, such error was harmless beyond a reasonable doubt. *Id.* Hamill drew

Appellant's blood at the hospital at the orders of the emergency room physicians for the purpose of medical diagnosis and treatment. Appellant's medical records included the results of the serum blood test conducted by the hospital, and those records were admitted at the beginning of the trial without objection by Appellant. Later, Hamill testified, also without objection by Appellant, that the results of the serum test indicated that Appellant's blood alcohol level was 0.27.

Absent the testimony of Silva, the blood alcohol test results from Appellant's medical records and the testimony of Hamill, which were both admitted without objection, were properly before the jury. *State v. Hardy*, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997) (blood draw by private actor—hospital— does not violate Fourth Amendment); *see also Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (where inadmissible evidence was admitted without objection by defendant, no reversible error occurs). With the serum blood test evidence already before the jury and the other evidence previously outlined, including Appellant's actions and physical condition at the time of the collision as well as his post-collision statements, we conclude that any error in the admission of Silva's testimony and other evidence related to the first vial of blood drawn did not contribute to Appellant's conviction because the result of the trial would have been the same. Therefore, we can say beyond a reasonable doubt that the blood draw evidence taken for the Midland Police Department did not contribute to Appellant's conviction. *See* TEX. R. APP. P. 44.2(a); *Meggs*, 438 S.W.3d at 147. We overrule Appellant's second issue.

### C. Issues Three & Four: Bolstering and Improper Comments

Appellant asserts that the State engaged in improper bolstering of its case in its closing argument when the prosecutor remarked, "Except for one thing, and that's that that presumption of innocence stops as soon as we started presenting evidence." Appellant also complains that the State made additional improper comments in its closing argument.

10

The State errs when it argues that the jury should believe a witness simply because the prosecutor does. *See Gardner v. State*, 730 S.W.2d 675, 698 (Tex. Crim. App. 1987). This type of argument is improper because it attempts to bolster the credibility of a witness through unsworn testimony by the prosecutor. *See Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981). But a prosecutor may argue his opinion concerning a witness's credibility or the truth of a witness's testimony if the opinion is based on reasonable deductions from the evidence and does not constitute unsworn testimony. *Wolfe v. State*, 917 S.W.2d 270, 281 (Tex. Crim. App. 1996); *McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985). In addition, a prosecutor may argue about the credibility of a witness if the defendant invited such argument and the prosecutor's arguments respond to the defendant's argument. *Chapman v. State*, 503 S.W.2d 237, 238 (Tex. Crim. App. 1974).

To preserve a claim that the prosecutor has injected his or her personal opinion into the case, the defendant must object. *Valdez v. State*, 2 S.W.3d 518, 521 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Likewise, to preserve any error based on improper jury argument, the defendant must object to the argument and pursue the objection until an adverse ruling is made by the trial court. TEX. R. APP. P. 33.1(a); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); *Hinojosa v. State*, 433 S.W.3d 742, 761 (Tex. App.—San Antonio 2014, pet. ref'd). The objection must be "a timely, specific objection." *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). Appellant failed to object during the closing arguments made by the State. Appellant has waived his complaints raised in Issues Three and Four on appeal. *See* TEX. R. APP. P. 33.1(a); *Mendez*, 138 S.W.3d at 341; *Hinojosa*, 433 S.W.3d at 761. We overrule Appellant's third and fourth issues.

## VI. *Conclusion*

We hold that there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant was intoxicated at the time he operated a motor

vehicle that collided with Hearne's vehicle and that, as a result, he injured Hearne and killed Harmon. We also hold that, even if the evidence from the blood draw for the first vial of blood was erroneously admitted, that error is harmless because Appellant's medical records, which included the hospital's serum blood test, were admitted at the beginning of trial without objection. In addition, Hamill testified, without objection, about the results of a serum blood test, a test that was ordered by physicians for the purpose of medical diagnosis and treatment of Appellant. We further hold that Appellant waived his complaints about improper bolstering during closing argument and other improper comments made by the State during closing argument. Finally, we note that intoxication is not an element of aggravated assault with a deadly weapon, and Appellant has not challenged the sufficiency of the evidence on that conviction. We overrule all of Appellant's issues on appeal.

## VII. *This Court's Ruling*

We affirm the judgments of the trial court.


MIKE WILLSON

JUSTICE


October 30, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

12