**Opinion issued April 2, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00624-CR
_____

**JARELL BARROW, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case No. 1721922**

---

## MEMORANDUM OPINION

Emmanuel Browne was working from his car as a cell phone repairman, when

he was shot and killed by Jarell Barrow.  A jury found Barrow guilty of capital

murder,[1] and the trial court assessed his punishment at confinement for life.[2]  Barrow contends there was no evidence that he intended to commit the underlying offense—robbery—at the time he shot Browne, that the trial court erroneously admitted DNA evidence, and that the trial court erred by failing to grant a mistrial after a witness's speculative testimony.  We affirm.

## Background

Emmanuel Browne, an entrepreneurial-minded 22-year-old man, operated a cell-phone repair business from his car.  On April 29, 2021, Browne drove his car, including all of his cell-phone-repair equipment, to the Yellowstone Apartment complex in Harris County, Texas.  There he was approached by two men—James Duplechain, a previous customer, and appellant, Jarell Barrow.  Both Barrow and Duplechain handed their phones to Browne, who began working on them.

While Browne was busy with the phones, Duplechain and Barrow walked away for a bit and spoke to a woman who was walking her dog.  After the woman and her dog walked in the opposite direction of Browne's car, Duplechain and Barrow returned to Browne's car.  Browne returned Duplechain's phone and began looking at Barrow's phone.  The phone was passed between the two men several

---

[1]  *See* TEX. PENAL CODE § 19.03(a)(2) (defining capital murder).

[2]  *See id.* § 12.31(a)(2) (defining punishment for capital murder in cases in which State does not seek death penalty).

2

times and Browne placed phones on his dashboard several times. There is disputed evidence about whether Browne returned Barrow's phone.[3]

However, it is undisputed that Barrow pulled a firearm and threatened Browne, who raised his hands in response. Barrow opened the driver's door, and Duplechain pushed him back. Barrow then moved to the rear door on the driver's side and opened it. At the same time, Browne grabbed for his own door and appeared to try and close it, but Duplechain was standing in the way. Barrow then fired two shots at Browne, who attempted to drive away before crashing into a nearby apartment. Browne died at the scene.

Police responding to the scene discovered that the entire shooting was captured on the apartments' security cameras, which was played for the jury. Barrow can be seen retrieving something from the floor of Barrow's car after the shooting but before he fled. Also captured on video, Barrow and Duplechain are seen running from the scene of the shooting and escaping through the back fence of the complex. Although they are not shown getting into a car, there was evidence that a white car was parked in the vicinity, and that it left at approximately the same time that Barrow and Duplechain escaped through the fence.

---

[3] An officer testifying for the State was of the opinion that Browne returned Barrow's phone and that Barrow put it in his pocket before the shooting. But an expert for the defense was of the opinion that the phone that Barrow handed Browne to repair was the same phone that Barrow left the scene with.

After viewing the security footage and releasing still photos from it to the public, police developed Barrow as a suspect. A witness from the scene later identified Barrow from a photo line-up. R. Segura, a Houston Police Department employee who personally knew Barrow, also identified him as the shooter seen on the security footage. Barrow's fingerprints were found on Browne's car. And his DNA was found on the rear, driver-side door.

Barrow was arrested and charged with the capital murder of Emmanuel Browne. The underlying offense elevating the murder to capital murder was robbery. A jury convicted Barrow, and the trial court assessed punishment at confinement for life.

## Sufficiency of the Evidence

Barrow now contends that the evidence is legally insufficient to prove the felony underlying the capital murder charge, i.e., robbery. He argues that "the evidence at trial does not clearly delineate whether it is more likely that Emmanuel Browne was killed in a robbery, a dispute, accidentally, in an act of perceived self-defense, or even as an act of vengeance."

**Standard of Review and Applicable Law**

When reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the judgment and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). In making this determination, we "consider all of the admitted evidence, regardless of whether it was properly admitted." *Stahmann*, 602 S.W.3d at 577. The factfinder "is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.*

Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018). The factfinder "can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *Stahmann*, 602 S.W.3d at 577, and "may rely on common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). When the record supports conflicting reasonable inferences, "we presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution." *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018).

We must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim.

App. 2015) (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We must also bear in mind that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hammack v. State*, 622 S.W.3d 910, 914–15 (Tex. Crim. App. 2021). "On appeal, the same standard of review is used for both circumstantial and direct evidence cases." *Id.* at 915.

"The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence." *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) (quoting *Murray*, 457 S.W.3d at 448–49). Evidence may be legally insufficient "when the record contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 320). We "cannot act as a thirteenth juror" and make our own assessment of the evidence; rather, our "role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

A person commits murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1). As charged in this case, a person commits capital murder if he "intentionally commits the murder in the course of

committing or attempting to commit . . . robbery[.]" *Id.* § 19.03(a)(2). "In the course of committing" means "conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense." *Robertson v. State*, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993).

Robbery requires that a person, in the course of committing theft, and with intent to obtain or maintain control of the property, "intentionally, knowingly, or recklessly causes bodily injury to another" or "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE § 29.02(a). To commit theft, in turn, a person must unlawfully appropriate property with intent to deprive the owner of the property. *Id.* § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent, or the property is stolen and the actor appropriates the property knowing it was stolen by another. *Id.* § 31.03(b)(1)–(2).

"For a murder involving a theft to constitute a capital murder committed in the course of a robbery, the intent to rob must be formulated before or at the time of the murder." *Herrin v. State*, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002). "Proof that the robbery was committed as an afterthought and unrelated to the murder is not sufficient." *Id.* The intent to rob may be inferred from circumstantial evidence and the actions and conduct of the defendant, including the fact that he killed the victim. *See Maldonado v. State*, 998 S.W.2d 239, 243 (Tex. Crim. App. 1999). "Proof of a

7

completed theft is not required to establish the underlying offense of robbery." *Id.* If there is evidence from which the jury could rationally conclude beyond a reasonable doubt that the defendant had the specific intent to obtain or maintain control of the victim's property before or during the commission of the murder, then the State has proven that the murder occurred in the course of robbery. *See Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995).

**Analysis**

Barrow argues that "[t]he evidence at trial does not clearly delineate whether it is more likely that Emmanuel Brown was killed in a robbery, a dispute, accidentally, in an act of perceived self-defense, or even as an act of vengeance." Barrow also details direct evidence that he believes that the State could and should have admitted to prove its case. Essentially, Barrow contends that the evidence is insufficient because there are "alternative reasonable hypotheses" to explain the events seen by the jury on the security video.

The State, however, is not required to negate every alternative hypothesis that Barrow advances. *See Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) ("Although the State must prove that a defendant is guilty beyond a reasonable doubt, the State's burden does not require it to disprove every conceivable

alternative to a defendant's guilt.").[4]   Likewise, in conducting a legal-sufficiency review, this Court does not consider evidence that the State might have but did not produce at trial.  *See Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004) ("In applying the *Jackson* sufficiency review, an appellate court *must consider all evidence* which the jury **was** permitted, whether rightly or wrongly, to consider.") (bold emphasis added).

Barrow seems to argue that there was insufficient evidence of intent to commit a robbery because, if he took something from the scene, it was his own phone. However, the evidence on this issue was not undisputed.  At trial, Barrow presented an expert who testified that the "there is moderate to strong support to suggest that that [the phone Barrow left the scene with] is the same phone that he brought to the scene with him."

However, that same expert conceded on cross-examination that whatever Barrow retrieved from the floorboard before fleeing the scene could have been an "additional cell phone" that Browne had placed on the dashboard while working on

---

[4]     *See also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt."); *Staves v. State*, No. 01-22-00268-CR, 2022 WL 16640808, at *3 (Tex. App.—Houston [1st Dist.] Nov. 3, 2022, no pet.) (mem. op., not designated for publication) ("That there is an alternative reasonable hypothesis in which [the victim] 'might' have accidentally fallen to the ground and died before appellant kicked him in the head or neck does not render the evidence legally insufficient.").

the phones, which had then fallen to the floor. Browne's father testified that Browne had several cell phones in his car at all times when working. And, Detective T. Tyler testified that, when he watched the video, he saw Barrow put a cell phone in his left pocket before shooting Browne. Based on the conflicting evidence, the jury could have chosen to believe the State's witnesses and to disbelieve Barrow's expert. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) ("The jury, being the judges of the facts and credibility of the witnesses, could choose to believe or not believe the witnesses, or any portion of their testimony.").

In addition to seeing Barrow retrieve something from the floorboard of the car, the jury also saw that he fled the scene. From his flight, the jury could have inferred a consciousness of guilt. *See Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) ("Evidence of flight evinces a consciousness of guilt.).

Finally, to prove a robbery, there is no legal requirement that the property stolen must be recovered—proof of a completed theft is not even required. *Russo v. State*, 228 S.W.3d 779, 794 (Tex. App.—Austin 2007, pet. ref'd).

The State presented evidence from which a rational jury could have concluded that Barrow intentionally murdered Browne and that Barrow had formed the specific intent to obtain Browne's property before or at the time of the murder. *See Cooper v. State*, 67 S.W.3d 221, 223–24 (Tex. Crim. App. 2002) (stating that Court of Criminal Appeals "had held 'numerous times' that evidence is sufficient to prove

10

murder 'in the course of' committing robbery in a capital murder case if the State proves that the robbery occurred immediately after the murder" and that "[t]he general rule is still that a theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft"). Here, after shooting Browne, Barrow took something from the car that the jury could have concluded was a cell phone belonging to Browne before fleeing the scene.

We overrule Barrow's first issue.

### Admission of DNA Evidence

Barrow also contends that the trial court erred by admitting DNA evidence "without requiring the State to establish the as-applied reliability of its DNA [evidence] in this case." At the hearing on the admissibility of DNA evidence, Barrow presented a defense expert who raised concerns about the reliability of the DNA analysis in this case. Specifically, Barrow's expert raised concerns about the use of a probabilistic genotyping software—STRmix.

### Harmless Error

But even assuming arguendo that the State's DNA evidence was unreliable and inadmissible, any error in its admission did not affect Barrow's substantial rights and must therefore be disregarded. *See* TEX. R. APP. P. 44.2(b).

Indeed, Barrow's identity was not an issue in the case—it was proved by multiple sources of evidence, including his fingerprints, his appearance in the

11

security video, Officer Segura's testimony that he knew and recognized Barrow from the security video, and Carolyn Holiday's identification of Barrow—both in a line-up and in court—as the person she saw approaching Browne's car shortly before he was shot. In his own brief, Barrow states that the DNA evidence "was of dubious forensic value." And when Barrow's counsel questioned Detective Tyler at trial, he argued that the DNA evidence added little to the State's case:

> [Defense Counsel]: The majority of this case boils down to that video; would that be fair.
>
> [Witness]: Yes, sir.
> . . . .
>
> [Defense Counsel]: But Mr. Barrow clearly touched the car, right?
>
> [Witness]: Yes, sir.
>
> [Defense Counsel]: And he clearly leaned into the car?
>
> [Witness]: Yes, sir.
>
> [Defense Counsel]: So the fact that there's DNA there is not shocking to anybody, correct?
>
> [Witness]: No, sir.

The DNA evidence in this case proved only that Barrow was at the scene of the murder—an issue not contested by either party. Thus, admission of the DNA evidence, even if erroneous, was harmless. *See Meggs v. State*, 438 S.W.3d 143, 147–48 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (admission of DNA evidence connecting defendant to murder scene was harmless beyond reasonable

12

doubt when defendant conceded presence at the scene and other evidence established presence).[5]

As a result, we overrule Barrow's second issue.

## Denial of Mistrial

Detective Tyler, while testifying as the jury watched the security video of the murder, stated as follows:

> [Witness]: Right not he's standing over him and he's looking at him. He's about to reach—right there he reaches down to get what I believe is the cell phone, and he's about to shoot Emmanuel. He's already been shot, he's leaned over bleeding, he's about to shoot him again close range. If you shoot someone at close range, two time, you're intending to kill him.
>
> [Defense Counsel]: Excuse me, Your Honor. I object to that. That's speculation. That's impeding on the jury's decision-making. I ask that—first, I object.

[5] *See also Kane v. State*, 173 S.W.3d 589, 594–95 (Tex. App.—Fort Worth 2005, no pet.) (admission of involuntary statement was harmless beyond reasonable doubt when subject matter did not relate to contested issue at trial); *Gov't of Virgin Islands v. Joseph*, 964 F.2d 1380, 1389–91 (3rd Cir. 1992) (admission of statement identifying defendant as shooter, in violation of Confrontation Clause, was harmless because defendant's identity as shooter was not contested issue at trial); *United States v. Richardson*, 764 F.2d 1514, 1528–29 (11th Cir. 1985) (admission of involuntary statement was harmless beyond reasonable doubt because, in light of defendant's defensive theories, statement did not tend to establish any contested fact issue); *cf. Garrett v. State*, 220 S.W.3d 926, 931–32 (Tex. Crim. App. 2007) (inclusion of unconstitutional mandatory presumption in jury charge was harmless because the instruction did not relate to contested issue at trial); *Motilla v. State*, 78 S.W.3d 352, 358–59 (Tex. Crim. App. 2002) (finding harmless non-constitutional error from admission of evidence that was "irrelevant and somewhat emotional" because it "bore no relationship to the sole contested issue in the case").

[Trial Court]: Sustained.

[Defense Counsel]: Now, I ask that it be stricken from the record and the jury be instructed to disregard.

[Trial Court]: Please disregard the witness's last statement. Only the jury can decide legal questions and what the facts show in this case.

[Defense Counsel]: I need to ask for a mistrial.

[Trial Court]: Understood. Overruled.

In his second issue on appeal, Barrow contends that the trial court erred by denying his motion for a mistrial because Tyler's testimony was "speculative" and "unduly intend[ed] to influence the jury."

**Standard of Review**

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Bryant v. State*, 340 S.W.3d 1, 12 (Tex. App.–Houston [1st Dist.] 2010, pet. ref'd). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A trial court may properly declare a mistrial if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Whether an error necessitates a mistrial must be made by examining the facts of each case. *Hernandez v. State*, 805

14

S.W.2d 409, 414 (Tex. Crim. App. 1990). We must uphold the trial court's ruling if it lies within the zone of reasonable disagreement. *Archie*, 221 S.W.3d at 699.

**Analysis**

Barrow argues that "[t]he lack of any other evidence that the jury could use to infer intent made it 'impossible to remove the harmful impression from the minds of the jurors.'" Prejudice is incurable only when the objectionable material is clearly calculated to inflame the minds of the jury or is of such a damaging character as to suggest it would be impossible to remove the harmful impression from the jurors' minds. *See Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009). Because of the remedy's extreme nature, a mistrial "should be granted only when residual prejudice remains after objections are sustained and curative instructions given." *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App.–Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex. Crim. App. 2006).

Here, as detailed in our sufficiency review above, there was sufficient evidence of Barrow's intent to commit the offense, even without Detective Tyler's testimony concluding the same. As such, the trial court's instruction to disregard Tyler's speculative testimony cured any error caused by his testimony. And we presume that the jury followed the trial court's instruction. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

We overrule Barrow's third issue.

15

## Conclusion

For all the reasons above, we affirm the trial court's judgment in all things.


Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.

Do not publish. Tex. R. App. P. 47.2(b)